**RAILROAD COMMISSION OF TEXAS et al. v. A. E. McDONALD MOTOR FREIGHT LINES, Inc., et al.**

No. 2206.

Court of Civil Appeals of Texas. Waco.

April 20, 1939.

Gerald C. Mann, Atty. Gen., and Glenn R. Lewis and Geo. W. Barcus, Asst. Attys. Gen., for appellants.

T. S. Christopher, of Fort Worth, for appellees.

ALEXANDER, Justice.

This is an appeal from a ruling of the trial court in granting a so-called temporary restraining order at an ex parte hearing without the introduction of any evidence. The plaintiffs, A. E. McDonald Motor Freight Lines, Inc., and A. E. McDonald and his wife, brought this suit against the Railroad Commission of Texas and the individual members thereof, and alleged, in substance, that plaintiff, A. E. McDonald, had been engaged in operating motor trucks in the transportation of freight for hire over the highways of the state since 1931, and that during said time he had been engaged exclusively in the transportation of freight in interstate commerce between the state of Texas and other states; that he had applied to the Railroad Commission of the state of Texas for a certificate of convenience and necessity authorizing him to so use the highways of the state, but that the Railroad Commission had refused such permit and was threatening to and would interfere with the plaintiffs in the operation of their business unless restrained from so doing. They alleged that in 1938, the business previously carried on by A. E. McDonald had been incorporated under the name of A. E. McDonald Motor Freight Lines, Inc. Plaintiffs prayed for an order restraining the defendants from in any manner interfering with them in the operation of their trucks in the transportation of

freight for hire over the highways of the state. On the 15th day of March 1939, the trial court granted a temporary restraining order as prayed, the same to remain in full force and effect until April 29, 1939, at six o'clock P. M. The defendants appealed.

One of the questions involved in the appeal is whether the Texas Motor Carriers Law (Vernon's Ann.Civ.St. art. 911b), insofar as it requires those engaged in the transportation of freight for hire by motor carrier over the highways of this state to obtain a certificate of convenience and necessity from the Railroad Commission of Texas, applies to those engaged exclusively in interstate commerce. It is appellees' contention that since they were engaged exclusively in interstate commerce, they were not required to secure such certificate from the Railroad Commission. This exact question seems to have been determined adversely to appellees in a suit in the Federal Court to which appellee A. E. McDonald was a party. Thompson v. McDonald, 5 Cir., 95 F.2d 937. This decision was affirmed by the Supreme Court of the United States in McDonald v. Thompson, 305 U.S. 263, 59 S.Ct. 176, 83 L.Ed. ——. A like holding was made by the Court of Civil Appeals at Austin in an opinion by Chief Justice McClendon in the case of Winton v. Thompson, 123 S.W.2d 951, and a writ of error was refused by the Supreme Court of Texas.

Furthermore, the plaintiffs failed to allege a right in themselves to operate motor vehicles over the highways in the transportation of interstate commerce. While they alleged that they have been engaged exclusively in the transportation of interstate commerce over said highways since 1931, they wholly fail to allege that they have a certificate of convenience and necessity from the Interstate Commerce Commission authorizing them to do so, or that they have an application pending therefor. In fact, it was admitted by appellees' counsel on oral argument that during all of the years that they have been so engaged, neither of them has ever had such a permit from either the Interstate Commerce Commission or the Texas Railroad Commission, and that they have been able to so operate only by securing preliminary injunctions here and yonder from the various courts, State and Federal, and by continuing to operate under one of them until another one could be secured. It was further conceded that they had never had a successful final

termination of any of said suits. Since they have never had a permit from the Texas Railroad Commission, they could not have been in bona fide operation in interstate commerce over the highways of this state at the time the Federal Motor Carrier Act went into effect and are therefore not entitled to continue to so operate although they may now have an application for an interstate certificate pending before the Interstate Commerce Commission. Federal Motor Carrier Act of 1935, 49 U.S.C.A. §§ 301–327; McDonald v. Thompson, 305 U.S. 263, 59 S.Ct. 176, 83 L.Ed. ——. Since they do not have a certificate of convenience and necessity from either the Interstate Commerce Commission or the Texas Railroad Commission, they have no right to use the Texas highways for the transportation of freight for hire. Consequently, they are not entitled to an injunction restraining the officers of this state from arresting them for doing so.

It is further contended that the Railroad Commission of the state has discriminated against the plaintiffs by granting to others certificates of convenience and necessity while denying to plaintiffs the same right. All such matters could be raised in a hearing before the Railroad Commission on an application for certificate, and if the Commission should act arbitrarily in the matter, such decision could be reviewed by an appeal to the district courts of Travis county, as provided in Vernon's Ann.Civ.St. art. 911b. Jurisdiction to review such a decision lies exclusively in the district courts of Travis county. It cannot be reviewed by an independent suit brought in some other county in the state. Central Freight Lines, Inc., v. C. & S. Motor Freight Lines, Inc., Tex. Civ.App., 125 S.W.2d 615.

It is further contended that the order here sought to be reviewed is a "temporary restraining order" distinguishable from a temporary injunction, and that as a consequence, no appeal will lie therefrom. The order in question was issued by the trial judge at an ex parte hearing at the commencement of the suit upon presentation of plaintiffs' petition and before the rights of the parties had been determined. It restrained the defendants from doing the things designated therein. It was issued on March 15, 1939, and, according to its terms, was to remain in force until April 29, 1939 at 6:00 o'clock P. M., which was the last day of that term of

said district court. Revised Statutes, art. 4662, provides that any party to a suit wherein a temporary injunction may be granted or refused may appeal from such order to the Court of Civil Appeals. It is only necessary for us to determine whether or not the order here appealed from is a temporary injunction as used by the Legislature in said statute. According to Standard Dictionary, an injunction is defined as "a judicial order or process, operating upon the person, requiring the person to whom it is directed to do or (usually) refrain from doing some designed thing," and "temporary" is defined as "lasting for a short time only." "Temporary injunction" is defined as "one granted at the commencement of a suit, before the rights of the parties have been determined, in order to restrain the defendant from the commission or continuance of a certain act which is in dispute. Such an injunction may be made perpetual or be discharged, according to the decision of the courts in the suit concerned." The order here sought to be appealed from meets all of these requirements. It is a judicial order granted at the commencement of the suit before the rights of the parties had been determined. It operates upon the persons of the defendants and requires them to refrain from doing certain designated things, and is not perpetual but is to last for a short time only. It is fair to presume that the Legislature was familiar with these commonly accepted definitions at the time the statute was adopted and that the terms used therein were so used in the light of their commonly accepted meaning. Furthermore, shortly prior to the adoption of the amendment to this statute, in 1907, which for the first time permitted an appeal from an order granting a temporary injunction, our Supreme Court had clearly recognized "a restraining order" as a temporary injunction. In the case of Riggins v. Thompson, 96 Tex. 154, 71 S.W. 14, 15, the court in an opinion by Chief Justice Gaines stated that "* * * under the practice of the American courts, three species of *injunctions* may be issued: (1) A restraining order, which is defined to be: 'A restraining order is an interlocutory order made by a court of equity upon an application for an injunction, and as part of the motion for a preliminary injunction, by which the party is restrained pending the hearing of the motion.' Bouv.Law Dict. (2d Ed.). (2) One which is intended to operate, and

which does operate unless dissolved by an interlocutory order, until the final hearing. And (3) a perpetual injunction, which can be properly ordered only upon the final decree." (Italics ours.) Further on, in the same opinion, the court used even more positive language in holding that "a restraining order" is a temporary injunction. In this connection, the court said: "It is true that a 'restraining order' is an injunction, but the terms are commonly used to designate a temporary injunction, as distinguished from an injunction which is to remain in force during the pendency of the suit." This opinion was rendered in 1902 and was doubtless familiar to the members of the Legislature at the time the statute was amended in 1907, and if the Legislature had in mind a technical definition of the terms "temporary injunction," as used by it in the amendment, it would be reasonable to assume that it so used the term in the light of the meaning that had been given to it by the Supreme Court of the state—that is, that the terms "restraining order" were commonly used to designate a "temporary injunction." In fact, so well was it understood by the bench and bar at the time said amendment was adopted that "a restraining order" was a temporary injunction that in the case of Hoskins v. Cauble, Tex.Civ.App., 198 S.W. 629, it was contended that the terms "temporary injunction," as used in the amendment, were restricted to "restraining order" and that the terms were not broad enough to include a preliminary injunction issued to remain in force until the final disposition of the case. The definition given by Chief Justice Gaines in the case of Riggins v. Thompson, supra, was relied on as sustaining that contention. As a further aid in determining the meaning of the terms "temporary injunction," as used in the amendment, we should take into consideration the evils intended to be corrected by the amendment. Prior to the amendment it was a settled rule in this state that no appeal would lie from any kind of an interlocutory injunctive or restraining order granted by the trial court prior to a final trial on the merits. Medlin v. Seidemann, Tex.Civ.App., 79 S.W. 590. It had become apparent that the injudicious use of such interlocutory orders without the right of review on appeal often worked great havoc. The amendments of 1907 and 1909 to what is now known as Revised Statutes, art. 4662, allowing an appeal from a temporary injunction, was

intended to grant relief against such evils. Certainly as much harm could be done by a so-called "restraining order" granted at the beginning of a suit without a hearing to remain in force for weeks or even months as would be caused by an injunction granted after a preliminary hearing that was to remain in force until a trial can be had on the merits. It is not unreasonable to assume that these so-called "restraining orders" might be issued to remain in force for long periods of time as above indicated. For instance, the order here complained of was by its own terms to remain in force for six weeks. In the case of Richardson v. Martin, Tex.Civ. App., 127 S.W.2d 247 (March 30, 1939) the so-called restraining order was issued on December 14, 1938, and was to remain in force until January 30, 1939. On the last named date, the order was extended to February 11, 1939, but before the expiration thereof, the court on the 8th of February extended the order to April 29, 1939. In that case the so-called temporary restraining order effectively tied the hands of the peace officers for a period of 4½ months. In the case of Speed v. Keys, Tex.Civ.App., 110 S.W.2d 1245, we had before us a similar order that was to remain in force for 3½ months. It would be unreasonable to hold that the Legislature intended to relieve against the oppression caused by one such injunctive order—one issued to remain in force until the case could be tried on its merits—and not to relieve against the other which, by its terms, was intended to remain in force for weeks or even months. We have recently had many similar orders before this court. In addition to the instances above cited, see the following: Richardson v. Hurley, Tex. Civ.App., 126 S.W.2d 1001 (March 2, 1939); Richardson v. Bird Bros., Tex.Civ. App., 125 S.W.2d 1078 (March 2, 1939); Lon A. Smith v. Ben Coleman, Tex.Civ. App., 127 S.W.2d 928 (April 20, 1939); Lon A. Smith v. W. B. Keele, Tex.Civ. App., 127 S.W.2d 926 (April 20, 1939); Railroad Commission of Texas v. Lon D. Fisher, Tex.Civ.App., 127 S.W.2d 925 (April 20, 1939); Barkley v. Conklin, Tex.

Civ.App., 101 S.W.2d 405. In every instance the peace officers have been enjoined from enforcing the criminal law of the state for a long period of time, and yet when an effort has been made to review such orders before this court, the contention has been made that the orders were merely "temporary restraining orders" and were therefore not appealable. The frequency with which these contentions have been made evidences clearly a definite intention on the part of these litigants to so label the order as to prevent an appeal therefrom and yet obtain all the advantages that could be had from a temporary injunction. We would indeed be gullible if we allowed ourselves to be deceived by the name by which these orders are designated and failed to look through the thin veil in which they are enshrouded and discover the real meaning and purpose thereof. Although labeled on the outside of the package as "restraining orders," they are in fact and in law temporary injunctions and are therefore subject to review by appeal. Barkley v. Conklin, Tex. Civ.App., 101 S.W.2d 405; Speed v. Keys, Tex.Civ.App., 110 S.W.2d 1245; Richardson v. Martin, Tex.Civ.App., 127 S.W.2d 247 (March 30, 1939); Richardson v. Bird Bros., Tex.Civ.App., 125 S.W.2d 1078 (March 2, 1939); Richardson v. Hurley, Tex.Civ.App., 126 S.W.2d 1001 (March 2, 1939); Lon A. Smith v. Ben Coleman, Tex.Civ.App., 127 S.W.2d 928 (April 20, 1939); Lon A. Smith v. W. B. Keele, Tex. Civ.App., 127 S.W.2d 926 (April 20, 1939); Railroad Commission of Texas v. Real, Tex.Civ.App., 80 S.W.2d 494; Alpha Petroleum Co. v. Terrell, 122 S.W. 257, 59 S.W. 2d 364, 372.

■ Since the judgment of the trial court must be reversed and the injunction dissolved, all costs, including those in the lower court and on appeal, will be adjudged against the appellees and the sureties on their injunction bond as provided in Revised Statutes, art. 4649.

The judgment of the trial court is reversed and the injunction is dissolved.