## SMITH et al. v. COLEMAN.

### No. 2197.

Court of Civil Appeals of Texas. Waco.

April 20, 1939.

Rehearing Denied May 11, 1939.

Gerald C. Mann, Atty. Gen., and Geo. W. Barcus and Glenn R. Lewis, Asst. Attys. Gen., for appellants.

Carter & Garonzik and Howard Barker, all of Dallas, for appellee.

GEORGE, Justice.

Ben Coleman, doing business as Coleman Brothers Transfer Company, on February 23, 1939, instituted in the 77th Judicial District Court of Freestone county an injunction suit against the members of the Railroad Commission of Texas and J. R. ·Sessions, sheriff of Freestone county, Texas, praying for the issuance of a temporary restraining order enjoining the defendants individually and in their official capacities, their agents, servants and employees, from causing either directly or indirectly the arrest of appellee's drivers or in anyway the molestation of or interference with appellee, his drivers and his trucks while engaged in interstate commerce; that a hearing on the cause be had, and that a temporary injunction, with like restraint, issue, and that upon final hearing the temporary injunction be made permanent. The Honorable H. F. Kirby, judge of the court, on the same day, upon appellee's verified petition being presented to him, without notice to and hearing of appellants, entered the following fiat: "You are hereby ordered and directed to issue a temporary restraining order to .the defendants, and each of them, herein restraining said defendants, their agents, servants and employees from causing, either directly or indirectly, in any way the molestation, arrest or interference with the plaintiff and his trucks and truck drivers and employees, and from in any manner interfering with the operation of trucks ·belonging to the plaintiff ·while· engaged in interstate commerce over highway No. 75 between Houston and Dallas, and highway No. 80 between Dallas and Fort Worth, and highway No. 6 between Houston and Waco, and highway No. 6 between Waco and Dallas, and from in any way

impeding, hindering or interfering with plaintiff's business in the transportation of property in interstate commerce in any manner whatsoever upon plaintiff's executing a good and sufficient bond, conditioned as required by law, in the sum of $1000.00, such temporary restraining order to remain in full force and effect until changed by further order of this court. You will further notify said defendants, and each of them, to appear in this court on the 1st day of May, 1939, at 9:00 A. M. to show cause, if any they have, why this temporary restraining order should not be made into a temporary injunction pending a final hearing in this cause. Entered this the 23rd day of February, 1939." From which order the members of the Railroad Commission and J. R. Sessions have appealed.

The principal questions involved in this cause are (1) whether the order of the trial judge is in effect and in fact a temporary injunction from which an appeal lies; and (2) whether the Texas Motor Carriers Law, insofar as it requires motor carriers of freight for hire in interstate commerce over Federal aided Texas highways to obtain a certificate or permit from the Railroad Commission before engaging in such business, has been superseded by the Federal Motor Carrier Act of 1935, 49 U.S.C.A. § 301 et seq.

■■■ Appellee has filed in this court a motion to dismiss the appeal on the ground that the order embodied in the fiat amounts only to a temporary restraining order and vigorously insists that no appeal lies therefrom. We recognize that, under the practice of our courts, three species of injunctions may be issued: "(1) A restraining order, which is defined to be: 'A restraining order is an interlocutory order made by a court of equity upon an application for an injunction, and as part of the motion for a preliminary injunction, by which the party is restrained pending the hearing of the motion.' Bouv.Law Dict. (2d Ed.) (2) One which is intended to operate, and which does operate unless dissolved by an interlocutory order, until the final hearing. And (3) a perpetual injunction, which can be properly ordered only upon the final decree." Riggins v. Thompson, 96 Tex. 154, 71 S.W. 14; Fort Worth Street R. Co. v. Rosedale Street R. Co., 68 Tex. 163, 7 S.W. 381; Ex parte Zuccaro, 106 Tex. 197, 163 S.W. 579, Ann. Cas.1917B, 121. And there is authority to

the effect that no appeal lies from a mere temporary restraining order. Nall v. Malley, Tex.Civ.App., 55 S.W.2d 593; Lokey v. Elliott, Tex.Civ.App., 88 S.W.2d 126; 24 Tex.Jur. sec. 234, p. 291; Railroad Commission of Texas v. Real, Tex.Civ. App., 80 S.W.2d 494; Allred v. Beggs, 125 Tex. 584, 84 S.W.2d 223, par. 1. But the purpose of the order is obvious on an examination of the entire record. The 77th Judicial District Court of Freestone County, Texas, convened in regular session on the first Monday in February, 1939, same being February 6, 1939, and continued in session for four weeks—that is until and inclusive of Saturday, March 4, 1939. The return day of the next term of that court is May 1, 1939, the day on which the clerk was directed in the order to notify appellants to appear and show cause why the designated temporary restraining order should not be made into a temporary injunction. The order restrains appellants from doing each and every thing complained of by appellee. No reason is suggested why hearing could not have been had within a week or ten days to determine whether a temporary injunction should issue. It appears that appellants were ready to meet the issues presented within such indicated period of time. The absence of any allegation of facts tending to show cause for granting of what is styled a temporary restraining order, extending from February 23, 1939 to May 1, 1939, the return day of the next term of court, is significant. The cause was subject to preliminary hearing after due notice at any time prior to as well as on and after May 1, 1939, and it would be subject to final hearing on and at any time after May 1, 1939, provided due service should be had. It is to remain in full force and effect until changed by further order of the court. The language of the petition and fiat indicates an intention to give to appellee all the protection of a temporary injunction for at least a period of time in excess of two months and until the order of the court is changed rather than to preserve the subject matter of the litigation and its status quo until a hearing could be had to determine whether a temporary injunction should issue and continue in force pending a hearing on the merits. It is also apparent that it is becoming a practice of those who desire to conduct their business in opposition to the law to secure what is styled a restraining order in an attempt to secure the benefits of an injunc-

tion for an unreasonable length of time and at the same time prevent an appeal from such order by what is commonly known as a technicality in our procedure. The fact that the order contained in the fiat was called a temporary restraining order is not controlling in determining the character of the order, but the restraint which the order imposes, its effect and the object to be accomplished determine its true name and character. The order measured by this test is a temporary injunction. Therefore, the motion to dismiss the appeal is overruled. Terrell v. Alpha Petroleum Co., Tex.Civ.App., 54 S.W.2d 821; Alpha Petroleum Co. v. Terrell, 122 Tex. 257, 59 S.W.2d 364, 372; Griffith v. State, Tex. Civ.App., 210 S.W. 293; Ex parte Olson, 111 Tex. 601, 243 S.W. 773; Baumberger v. Allen, 101 Tex. 352, 107 S.W. 526; 32 C.J. 28; Railroad Commission of Texas v. Real, Tex.Civ.App., 80 S.W.2d 494; Allred v. Beggs, 125 Tex. 584, 84 S.W.2d 223, par. 2; Barkley v. Conklin, Tex.Civ. App., 101 S.W.2d 405, par. 8; Speed v. Keys, Tex.Civ.App., 110 S.W.2d 1245.

Appellee alleges that he is now and has been continuously and regularly for many years prior to June 1, 1935 operating motor trucks in the transportation of property for hire as an interstate common carrier over Federal aided Texas highways; that the Interstate Commerce Commission, on or about October 20, 1938, upon proper application and after due notice and hearing thereon, entered its order granting in all things appellee's application for a certificate of public necessity and convenience under the Federal Motor Carrier Act; that, in the alternative, he was engaged in such transportation on and before the effective date of the Federal Motor Carrier Act, to-wit, October 1, 1935, and that at all times subsequent thereto he has continued to engage in such transportation as an interstate common carrier; that within 120 days after October 1, 1935, he duly and properly made application for a certificate of necessity and convenience to the Interstate Commerce Commission; that he is entitled to continue such operations until such time as he may be ordered to discontinue same by the Interstate Commerce Commission, and that no such orders have been issued by such Commission; that the sole and exclusive jurisdiction, power and authority to regulate the transportation of all passengers and property by motor vehicles operated in interstate commerce is vested in the Interstate Commerce Commission by the Act of Congress in enacting the Federal Motor Carrier Act of 1935, approved August 9, 1935, and by its terms effective on and after October 1, 1935; that because he has not received from the Railroad Commission a certificate of necessity and convenience under and pursuant to Art. 911b, Vernon's Ann.Civ.St. of Texas, the Railroad Commission and the members thereof and their agents, servants and employees have refused to issue and deliver to him the kind of license tags or numbers that are required by the Railroad Commission to be affixed to all motor vehicles carrying goods in the transportation business for hire as common carriers; that the Railroad Commissioners have issued instructions to their employees and enforcement officers to arrest all drivers of motor vehicles operating such vehicles for the transportation of goods for hire as common carriers on the highways of Texas unless such license tags or plates appear upon or are attached to said motor vehicles, and that such orders will be carried out, and the appellee and his truck drivers will be arrested for violating the provisions of Article 827a, Vernon's Ann.P.C., unless restrained by decree of the court. But he does not allege affirmatively that he has applied to the Railroad Commission of Texas for a permit or a certificate, and that he has shown or offered to show that the structure of the highways proposed to be used by him are such that their proper preservation will not be impaired by the use sought by him, and that the safety of the public will not be unreasonably endangered, etc.

The Federal Motor Carrier Act declares that no common carrier by motor vehicle subject to its provisions shall engage in interstate commerce unless there is in force with respect to such carrier a certificate of public convenience and necessity issued by the Interstate Commerce Commission authorizing the operation. A proviso therein decrees that if any such carrier was in bona fide operation as a common carrier by motor vehicle on June 1, 1935, over routes for which application is made and has so operated since that time, the Commission shall issue the certificate without requiring further proof that public convenience and necessity will be served by the carrier's operation, and that pending determination of the application the applicant is authorized to continue operations. Article 911b, Vernon's Ann.Civ.St., enumerates what the Railroad Commission shall consider in granting or refusing permits

and certificates; what an applicant for a certificate or a permit must show; and makes it the duty of the Commission to relieve the highways from undue burden by reason of the use thereof by motor carriers and to secure the safety of the traveling public thereon. It requires every carrier of property by motor for hire over the state's public highways to obtain from the Railroad Commission a certificate of convenience and necessity.

The Texas Motor Carriers Act was enacted in 1929 and amended in 1931. The Supreme Court of the United States in 1932 in the case of Stephenson v. Binford, 287 U.S. 251, 53 S.Ct. 181, 77 L.Ed. 288, 87 A.L.R. 721, said that the Act could be construed and sustained as a constitutional exercise of the legislative power to regulate the use of the state highways, and in Sproles v. Binford, 286 U.S. 374, 52 S.Ct. 581, 76 L.Ed. 1167, held that Art. 827a, Vernon's Ann.P.C., was valid. The Supreme Court of Texas reached the same conclusion in Ex parte Sterling, 122 Tex. 108, 53 S.W.2d 294. The Federal Motor Carrier Act became effective October 1, 1935, and is remedial and implies recognition of a state's power to withhold or condition use of its highways in transportation for hire. McDonald v. Thompson, 305 U.S. 263, 59 S.Ct. 176, 83 L.Ed. ——.

The Federal Motor Carrier Act operates to limit such provisions of the Texas Motor Carriers Law as confers upon the Railroad Commission the power to determine whether there exists a public convenience and necessity for the proposed service founded upon the adequacy of the existing transportation facilities, etc., to carriers of property moving intrastate. State ex rel. Board of Com'rs v. Martin, 210 Iowa 207, 230 N.W. 540; Buck v. Kuykendall, 267 U.S. 307, 45 S.Ct. 324, 69 L.Ed. 623, 38 A.L.R. 286; Bush & Sons Co. v. Maloy, 267 U.S. 317, 45 S.Ct. 326, 69 L.Ed. 627. But it does not deprive the Railroad Commission of its jurisdiction and power to determine whether the safety of the traveling public and the preservation of the state's property in the highways will permit any additional burdens of commerce upon and over the highways irrespective of whether such burdens result from interstate or intrastate commerce thereon. South Carolina State Highway Department v. Barnwell Bros., Inc., 303 U.S. 177, 58 S.Ct. 510, 82 L.Ed. 734; Id. 303 U.S. 625, 58 S.Ct. 510; Kelly v.

State of Washington, 302 U.S. 1, pars. 5, 7 and 9, 58 S.Ct. 87, 82 L.Ed. 3; Thompson v. McDonald, 5 Cir., 95 F.2d 937; Winton v. Thompson, Tex.Civ.App., 123 S.W.2d 951. It is therefore manifest that appellee is not entitled to an injunction protecting him while using the public highways of Texas, for the reason he has not alleged facts showing a right to the use of such highways for the transportation of property moving in interstate commerce for hire.

Inasmuch as the judgment of the trial court must be reversed and the injunction dissolved, all costs, including those incurred in the lower court as well as on appeal, will be adjudged against the appellee and the sureties on his injunction bond under the provisions of Art. 4649, Revised Civil Statutes.

The judgment of the trial court is reversed and the injunction is dissolved.