

# THE ATTORNEY GENERAL
# OF TEXAS

GERALD C. MANN
XXXXXXXXXXXXXXXXXXX
ATTORNEY GENERAL

AUSTIN 11, TEXAS

Hon. James E. Kilday
Director, Motor Transportation Division
Railroad Commission of Texas
Austin, Texas

Dear Sir:

Opinion No. O-2690
Re: Authority of Miller and Miller
Freight Lines to interchange
freight at Wichita Falls under
certificates containing certain
restrictions.

In your letter of September 5, 1940, and collaterally you advise us of these facts: Miller and Miller Freight Lines hold common carrier motor carrier certificates of convenience and necessity issued by the Railroad Commission authorizing substantially the following operations: #2780, from Childress to Paducah and from Quanah to Paducah; #2841, from Wichita Falls to Memphis via Quitaque, Childress and Estelline; #2391, from Childress to Quitaque via Turkey and Estelline and from Childress to Amarillo via Memphis and Estelline; #2565, from Lubbock to Wichita Falls via Lorenza, Rolls, Floydada, Matador and Vernon, and Rolls to Matador via Roaring Springs and Dickens, and with an alternate route; #2156, from Dallas and Fort Worth to Amarillo, via Wichita Falls. Said Certificate #2156 contains this restriction:

"The carrier is further prohibited from transporting property or picking up property destined to any point between Amarillo on the one hand and Dallas or Fort Worth on the other hand, even though such property is to be transported the entire distance to Amarillo or to any other point, and there transferred to an interline carrier. It is the purpose of this restriction to prohibit this carrier from picking up or delivering property destined to or from any point between Fort Worth, Dallas and Amarillo, even though such property might be handled by an interline connecting carrier."

Certificate #2156 was originally issued at a different time and to a different person from the various other certificates.

You advise us that Miller and Miller Freight Lines hold no other certificates issued by the Railroad Commission than those mentioned above, although it has a certificate issued by the Interstate Commerce Commission authorizing service from Vernon into Altus, Oklahoma, and Hollis, Oklahoma, into Childress, Texas, and a return movement from Childress by the reverse route. You request our opinion in response to the following questions:

"(1)  Can Miller and Miller interchange at Wichita Falls, with their own line, freight originating in Dallas or Fort Worth destined to Childress, Texas, a point between Fort Worth and Amarillo served by them on an unrestricted certificate, when such freight is hauled all the way intrastate?

"(2)  If the freight to Childress out of Dallas is loaded on the truck which regularly runs through Vernon and Altus into Childress, is such operation via the State of Oklahoma illegal insofar as the Texas law is concerned?

"(3)  In other words, may a restriction in a Texas intrastate certificate be circumvented by a carrier's going across a State line under federal authority and thence back to Texas under federal authority into a Texas town which may not be served by such carrier under Texas laws if it stays within Texas because of the restriction in the intrastate certificate?"

It seems rather clear to us that while Certificates Numbers 2156 and 2841 were separately owned the operator of #2156 could not have picked up freight at Dallas or Fort Worth and delivered it to the holder of #2841 at Wichita Falls for transportation to Childress, in view of the restrictions contained in Certificate No. 2156. The fact that the certificates were finally gathered into a common ownership did not enlarge the operating rights of either of them. From the opinion of the Austin Court of Civil Appeals in Railroad Commission v. Red Arrow Freight Lines, 96 S.W. (2d) 735, we quote:

"The two certificates were granted at different times to different individuals. They were granted to serve separate and distinct transportation requirements:  The one served the territory from Houston to San Antonio and intermediate points; the other, that from San Antonio to the Valley and intermediate points. In considering the question of convenience and necessity as to each certificate, only the needs, require-

ments, etc., of the two termini and intermediate points were involved. Neither certificate had any relation to the other. The fact that common ownership was finally united in Lawler in no way modified their effect."

If we understand the facts correctly, while this carrier has a certificate from the Interstate Commerce Commission authorizing service from Vernon, Texas, to Altus, Oklahoma, and from that point to Childress, Texas, it has no certificate from the Railroad Commission of Texas authorizing the use of the Texas roads in such operations. Even though it should be conceded that nothing but interstate shipments are being handled, its operations in Texas on the journey from Vernon to Childress, via Altus and Hollis, Oklahoma, are clearly illegal. Thompson v. McDonald, 95 F. (2d) 937; K. M. Fisher v. Railroad Commission, 138 S.W. (2d) 829; Winton v. Thompson, 123 S.W. (2d) 951, error refused; Railroad Commission v. Tips, 130 S.W. (2d) 1078; Bates v. Railroad Commission, 138 S.W. (2d) 1104; Railroad Commission v. L. D. Fisher, 127 S.W. (2d) 925; Smith v. Keele, 127 S.W. (2d) 926; Smith v. Coleman, 127 S.W. (2d) 928; Railroad Commission v. McDonald, 127 S.W. (2d) 932.

Since Miller and Miller Freight Lines can neither take the freight off its certificate #2156 operated trucks at points between Fort Worth and Amarillo and load the same onto its Certificate #2841 operated trucks for transportation to Childress, nor carry such freight around by Altus and Hollis, Oklahoma, to Childress, a categorical answer to your questions is not considered necessary.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By s/ Glenn R. Lewis
Glenn R. Lewis
Assistant

GRL:AMM:wc

APPROVED SEP 16, 1940
s/Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

Approved Opinion Committee By  s/BWB  Chairman