Tom E. ELLIS, County Clerk, Dallas County, et al., Appellants,

v.

Charles VANDERSLICE et al., Appellees.

No. 18059.

Court of Civil Appeals of Texas, Dallas.

Oct. 19, 1972.

David R. Snodgrass, Morris Jaffe, Wynne, Jaffe & Tinsley, Whitley R. Sessions, Henry Wade, Dist. Atty., Harry J. Schulz, Asst. Dist. Atty., Dallas, for appellants.

Douglas E. Bergman, Bergman & Hicks, G. H. Kelsoe, Jr., Kelsoe & Paternostro, Dallas, for appellees.

GUITTARD, Justice.

This appeal was taken from an order restraining the county clerk of Dallas County from certifying to the commissioners court a petition for a local option election

under the Texas Liquor Control Act.[1] On October 12, 1972, after submission to this court on briefs and oral argument, we reversed and dissolved the trial court's order. We now state our reasons.

Appellees Charles Vanderslice and others alleged in their "Original Petition and Application for Temporary Restraining Order" that they were qualified voters of Justice of the Peace Precinct No. 2 of Dallas County, and were opposed to an election to legalize the sale of alcoholic beverages within such precinct. They alleged that on August 28, 1972, ten or more individuals claiming to be qualified voters of the precinct applied to defendant Tom E. Ellis, County Clerk of Dallas County, for a petition for local option election, and thereafter mailed letters to residents of precinct 2 soliciting signatures on a form of petition for local option election. Appellees further alleged that approximately 9,000 such petitions had been filed with the county clerk, that he was preparing to certify to the commissioners court that all statutory requirements had been met in regard to such petitions, and that he would make such certificate momentarily. Among the irregularities alleged as grounds for restraining such certification were that the petitions did not bear the original seal of the clerk, but only photographic reproductions of it, that the signatures had been obtained by fraudulent representations, and that an insufficient number of qualified voters had signed with intent to request an election on the issue of legalizing sale of alcoholic beverages within precinct 2.

Appellees presented their application *ex parte* to the judge of one of the district courts of Dallas County on Friday, October 6, 1972, and he immediately signed a "temporary restraining order" restraining the county clerk from certifying to the commissioners court the number of qualified voters signing any petition for local option election within precinct 2, and setting a hearing on the application for temporary injunction for October 16, 1972. On Monday, October 9, defendant clerk presented to the district court a motion to dissolve the temporary restraining order, alleging that the court had no authority to issue it, that it was prematurely brought as an election contest, and that section 40a of the Texas Liquor Control Act[2] provides an adequate means for contesting a local option election. The clerk further alleged that the least expensive manner in which to conduct a local option election was to include the issue on the ballot at the general election to be held November 7, 1972, that the cost of a special election would be at least $25,000, that substantial savings would result if the commissioners court at its regular meeting on October 9 elects to place the local option issue on the ballot for the general election, that the commissioners court would not have another opportunity before the general election of November 7 to place the local option issue on the ballot, and that the effect of the order restraining him from certifying the petitions until after a hearing on October 16 was to prevent the commissioners court from including the issue on the general election ballot.

The trial court permitted an intervention by L. M. White and others, who alleged that they were the voters who had applied for and had circulated the petitions for local option election. They moved to dissolve the "temporary restraining order" on the same grounds alleged by the clerk and they alleged further that they would have to incur additional expense and effort if the issue were not placed on the general election ballot on November 7.

The district court overruled the motions to dissolve. The clerk and the intervenors appeal from that ruling and also from the original order.

---

1. Vernon's Ann.Tex.Pen.Code art. 666–32 (Supp.1972).

2. Tex.Pen.Code Ann. art. 666–40a (1952).

## APPEALABILITY OF TRIAL COURT'S ORDERS

Appellees have filed a motion to dismiss the appeal on the ground that the orders in question are not appealable. This question depends on Tex.Rev.Civ.Stat. Vernon's Ann. art. 4662 (1952), as follows:

"Any party to a civil suit wherein a temporary injunction may be granted or refused or when motion to dissolve has been granted or over-ruled, under any provision of this title, in term time or in vacation, may appeal from such order or judgment to the Court of Civil Appeals * * *."

Appellees contend that this statute limits interlocutory appeals to orders granting or overruling "temporary injunctions," which are granted after hearing and continue to final trial, and does not extend to "temporary restraining orders," which are granted *ex parte* and continue only until a hearing can be had. One line of decisions by Texas intermediate courts seems to support this distinction. See Smith v. State, 140 S.W.2d 299 (Tex.Civ.App., Eastland 1940, no writ) and cases therein cited. Other Texas authorities have construed article 4662 more broadly to permit an appeal from a "temporary restraining order" when the effect of the order goes beyond maintaining the status quo until a hearing can be had. Alpha Petroleum Co. v. Terrell, 122 Tex. 257, 59 S.W.2d 364, 372 (1933); Railroad Commission v. A. E. McDonald Motor Freight Lines, 127 S.W. 2d 932 (Tex.Civ.App., Waco 1939, no writ); Smith v. Coleman, 127 S.W.2d 928 (Tex.Civ.App., Waco 1939, no writ); Barkley v. Conklin, 101 S.W.2d 405 (Tex. Civ.App., Waco 1937, no writ); Railroad Commission v. Real, 80 S.W.2d 494 (Tex. Civ.App., Austin 1935, no writ).

■ Appellees argue that these authorities are not applicable because under Texas Rules of Civil Procedure 680 a temporary restraining order must expire by its own terms within ten days after issuance unless extended for a like period for good cause, and the order now in question continues only until October 16, the date set for hearing of the application for temporary injunction. We cannot agree with this argument because it assumes that our statutory jurisdiction under article 4662 is limited by rule 680. That rule does not purport to limit our jurisdiction and we do not construe it as attempting to do so. The cases above cited, though decided before adoption of rule 680, still support a broader construction of article 4662 than one which would limit appeals to temporary injunctions granted after hearing and effective until final trial.

From the above authorities it is clear that our jurisdiction is not limited by the form of the order and that we must consider its actual impact on the situation of the parties. In this case we have no difficulty in determining that the circumstances of the parties would be materially changed if the temporary restraining order is permitted to continue until after hearing on October 16. Section 32 of the Texas Liquor Control Act[3] requires the commissioners court to order a local option election at its "next regular session" after a proper petition with the necessary signatures is filed with the county clerk. Tex. Rev.Civ.Stat.Ann. art. 2348 (1971) provides: "The regular terms of the commissioners court shall be commenced and be held at the court house on the second Monday of each month throughout the year and may continue in session one week * * *." Under this article a regular term of the commissioners court began October 9, 1972. If the temporary restraining order is permitted to continue until after the hearing on October 16, the commissioners court will not be required to act on it, and arguably would not be authorized to act on it, until the next regular term, which begins November 13. Thus, the temporary restraining order may effectively prevent action by the commissioners

3. Tex.Pen.Code art. 666–32 (Supp.1972).

court at a time when the commissioners could effect substantial savings of county funds by including the issue on the ballot at the general election on November 7, and clearly prevents appellants from requiring such action at such a time. Appellants also point out that submission of the local option election at a special election rather than at a general election would materially affect the number of voters that may be expected to vote.

These circumstances show that the effect of the trial court's order will probably be felt well beyond the date set for hearing of the application for temporary injunction. Although the commissioners court, within its regular term, may defer action on such a petition until a subsequent date,[4] it has nothing before it on which to act or defer action until the clerk makes his certificate. We need not decide whether a "regular session" of the commissioners court under section 32 may be held at a time other than within a "regular term" as provided by article 2348. Neither do we need to speculate as to whether after conclusion of a temporary injunction hearing beginning on October 16, the commissioners court would have enough time remaining to call a local option election and prepare ballots for absentee voting in the general election, which must begin on October 18, twenty days before the general election, as provided by Tex. Election Code, art. 5.-05 (Supp.1972), V.A.T.S. It is enough to find, as we do, that by restraining the clerk from certifying the petition until after a hearing beginning October 16, the temporary restraining order goes beyond maintenance of the status quo and substantially changes the situation with respect to including the local option issue on the general election ballot. Consequently, we hold that the orders in question are appealable, and we overrule the motion to dismiss.

## AVAILABILITY OF INJUNCTIVE RELIEF

We turn now to the question of whether injunctive relief was available to appellees on showing that the clerk was not performing his duties concerning certification of the petitions in accordance with law. We conclude that such relief could not properly be granted, whether or not any dereliction of duty was shown. The rule is well established in Texas that the equitable powers of the courts may not be invoked to interfere with public officials in taking any of the steps involved in an election. This rule is sometimes rested on inability of the party seeking such relief to show invasion of any private right until the results of the election are declared, but is also based on the more fundamental principle that an election is an exercise of a political power beyond judicial interference at any stage. City of Dallas v. Dallas Consolidated Electric Street Ry. Co., 105 Tex. 337, 148 S.W. 292 (1912); Leslie v. Griffin, 25 S.W.2d 820 (Tex.Com.App. 1930); Winder v. King, 1 S.W.2d 587 (Tex.Com.App.1928).

Appellees argue that the clerk could have been required by mandamus to do his duty, and, consequently, can be restrained by injunction from acting improperly. This argument overlooks the distinction between judicial action which facilitates the election process and action which interferes with that process. The officer who has the duty to call an election can be required by mandamus to do so,[5] although the calling of an election is a political function which cannot be restrained by injunction.[6] Likewise, mandamus will lie

4. Akers v. Remington, 115 S.W.2d 714 (Tex.Civ.App., Fort Worth 1938, writ dism'd).

5. Wolf v. Petty, 414 S.W.2d 539 (Tex. Civ.App., Fort Worth 1967, no writ);

Singleton v. Smithers, 359 S.W.2d 152 (Tex.Civ.App., Amarillo 1962, writ ref'd n. r. e.).

6. Winder v. King, 1 S.W.2d 587 (Tex. Com.App. 1928).

to require public officers to canvass the votes at an election and declare the result,[7] but a court may not restrain the canvassing of votes on the ground that the election is illegal or irregular.[8]

Appellees concede that the rule against judicial interference with elections would apply to an order by the commissioners court calling a local option election and to each subsequent step until final canvassing of the returns, but they insist that it does not prevent judicial enforcement of the ministerial duties of the county clerk in determining whether the statutory requisites to calling the election have been met. They cite various decisions in which judicial power to require administrative officers to perform ministerial duties has been sustained, but none of these cases concerns elections.

■■■ We see no basis for a distinction between the duty of the county clerk to determine the statutory requisites for calling the election and the duties of public officers involved in any subsequent stage of the election process. The statutory method of contesting an election has been said to embrace every part of that process from the announcement of the candidates to the declaration of the results. Dickson v. Strickland, 114 Tex. 176, 265 S.W. 1012, 1018 (1924). Section 40a of the Texas Liquor Control Law specifically provides that the court determining the contest of a local option election "shall have jurisdiction to try and determine all matters connected with said election, including the petition of such election and all proceedings and orders relating thereto." Since determination of the regularity of the petition is thus expressly recognized as a part of the election process which may be attacked in a statutory contest, the conclusion follows that it is a step in the process not otherwise subject to judicial interference.[9]

■■ The question is not simply whether a statutory contest is an adequate remedy for irregularities in the process. The question is rather whether the entire election process is immune from judicial interference until the result is declared. The above authorities establish that it is. They are consistent with the practical view that in elections timing may be important, and are grounded on a sound policy against delaying the decision of the electorate while opposing factions debate the possible legal effects of that decision in the courts. Those effects can be judicially determined after the returns are in. These considerations apply as strongly to the process of examining and certifying the petitions as to any subsequent step in the process. We hold, therefore, that injunctive relief was not available to appellees to restrain the clerk from certifying the petitions to the commissioners court.

This holding is supported in principle by Hamilton v. Davis, 217 S.W. 431 (Tex. Civ.App., Austin 1919, writ ref'd), in which a candidate for nomination at a primary election sought an injunction restraining the county tax collector from issuing poll tax receipts to women on the ground that the statute giving women the right to vote was unconstitutional. Registration of voters is a step in the process which is even earlier than certification of petitions for a special election. The Austin Court of Civil Appeals held that even

7. Grant v. Ammerman, 437 S.W.2d 547 (Tex.Sup.1969).

8. City of Dallas v. Dallas Consolidated Electric Street Ry. Co., 105 Tex. 337, 148 S.W. 292 (1912) ; Leslie v. Griffin, 25 S.W.2d 820 (Tex.Com.App.1928).

9. Appellees cite Gilmore v. Waples, 108 Tex. 167, 188 S.W. 1037 (1916), which holds that a candidate for office in a general election was entitled to an in-

junction restraining the state executive committee of a political party from nominating an opposing candidate contrary to statute. The ground of the decision seems to be that plaintiff had no other remedy for a clear violation of law. The decision has been distinguished on the ground that an election contest would not have been successful. Hamilton v. Davis, 217 S.W. 431 (Tex.Civ.App., Austin 1919, writ ref'd).

if the statute were void, the suit was premature in that if any votes were illegally cast by women, the only remedy was a contest of the election.

For the reasons above given, the orders of the trial court are reversed, and the "temporary restraining order" is dissolved.