**Concurring Opinion Filed March 6, 2020**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-01333-CV

## IN RE BRUCE BISHOP, ASHLEY HUTCHESON, DALLAS COUNTY REPUBLICAN PARTY, AND MISSY SHOREY, Relators

**Original Proceeding from the 68th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-18-14298**

## CONCURRING OPINION
Opinion by Justice Molberg

I concur in the withdrawal of the panel opinion in this case. I write separately, however, to respond to Justice Schenck's dissent, which—although acknowledging the power of the Court to withdraw the panel opinion under Texas Rule of Appellate Procedure 42.1(c)—takes exceptional license to expound on the merits of the underlying issue and, in doing so, wrongly and injuriously interprets the Texas Election Code. I also write to address Justice Bridges' dissent, which joins in Justice Schenck's erroneous conclusion.

## I.

Relators sought a writ of mandamus directing the trial court to vacate its no-answer default judgment declaring Ashley Hutcheson, the Republican candidate for Dallas County Justice of the Peace, Precinct 2, Place 1, in the November 6, 2018 general election, ineligible for the office because she did not reside in the district as required by the Texas Election Code. *See* TEX. ELEC. CODE § 141.001(a)(5).

Margaret O'Brien, Hutcheson's Democratic general election challenger for the justice of the peace position, filed the underlying lawsuit challenging Hutcheson's residency on September 19, 2018. She sought (1) a declaratory judgment that Hutcheson was ineligible to assume office should Hutcheson win the upcoming November 6 general election, and (2) injunctive relief enjoining election officials from "certifying [her] as the winner of the general election," "signing a Certificate of Election certifying [her] name as the Justice of the Peace, Precinct 2, Place 1," and "administering an oath of office to [her]" in the event Hutcheson should win.[1]

Hutcheson failed to timely answer and, on October 26, 2018, the district court signed a default judgment granting O'Brien the relief she requested. Significantly,

---

[1] In O'Brien's earlier challenge to Hutcheson's right to appear on the general election ballot, this Court noted that the deadline for printing ballots was imminent and therefore declined to take any action that would interfere with the orderly process of the election. *In re O'Brien*, No. 05-18-00984-CV, 2018 WL 4141484, at *2 (Tex. App.—Dallas Aug. 29, 2018, orig. proceeding) (mem. op.).

the judgment was signed *prior to* the general election that would determine which candidate for the office was the victor.

This original proceeding for a writ of mandamus followed. It sought vacatur of the district court's no-answer default. On December 17, 2018, a panel of the Court conditionally granted the writ.

## II.

In concluding the trial court's default judgment was void and conditionally granting relators' petition as a result, the panel characterized O'Brien's suit as an "election contest." The panel correctly noted that default judgments in such proceedings are expressly prohibited by section 221.004 of the Texas Election Code. *See* TEX. ELEC. CODE § 221.004 ("A default judgment may not be rendered in an election contest.").[2] In conditionally granting the writ and directing the trial court to vacate the underlying judgment, the panel relied on this no-default provision. O'Brien's suit, however, was not an election contest, and the panel's reliance on the no-default provision—applicable only to election contests—was erroneous.

An election contest is not an ordinary lawsuit but is a special legislative proceeding to provide a remedy for elections tainted by fraud, illegality, or other irregularity. *Blum v. Lanier*, 997 S.W.2d 259, 262 (Tex. 1999); *Rossano v. Townsend*, 9 S.W.3d 357, 361 (Tex. App.—Houston [14th Dist.] 1999, no pet.)

---

[2] Section 221.004 is a part of title 14 of the election code, which relates exclusively to election contests.

(citing *Duncan v. Willis*, 302 S.W.2d 627, 630 (Tex. 1957)). As this Court has recognized, "[e]lection contests are creatures of statute, and the power of a trial court to consider such contests exists only to the extent authorized by statute." *Nichols v. Seei*, 97 S.W.3d 882, 883 (Tex. App.—Dallas 2003, no pet.); *see also De La Paz v. Gutierrez,* No. 13-18-00377-CV, 2018 WL 5289553 (Tex. App.—Corpus Christi–Edinburg Oct. 25, 2018, no pet.) (mem. op.); *City of Houston v. Bryant*, 516 S.W.3d 47, 51 (Tex. App.—Houston [1st Dist.] 2017, pet. denied).

Initially, an election contest may not be filed "earlier than the day after election day" or "later than the 30th day after the date the official result of the contested election is determined," unless it is required to be filed earlier under other provisions of section 232.008. *See* TEX. ELEC. CODE § 232.008(a)–(c). Simply, "[a] party cannot file such a suit until after the election." *Blum*, 997 S.W.2d at 262. O'Brien's suit was filed substantially *before* the general election and, in fact, was decided before election day. It was not, nor could it have been, a viable election contest under these circumstances.

Further and fundamentally, in an election contest, a court is limited to addressing the specific areas set forth in the election code. *See, e.g.*, *City of Granite Shoals v. Winder*, 280 S.W.3d 550, 557–58 (Tex. App.—Austin 2009, pet. denied). The narrow purpose of an election contest is to determine "whether the outcome of the contested election, as shown by the final canvass, is not the true outcome." TEX.

ELEC. CODE § 221.003(a). In making this determination, a tribunal is restricted to ascertaining whether:

(1) illegal votes were counted; or

(2) an election officer or other person officially involved in the administration of the election:

(A) prevented eligible voters from voting;

(B) failed to count legal votes; or

(C) engaged in other fraud or illegal conduct or made a mistake.

*Id*. O'Brien's residency challenge to Hutcheson's candidacy implicated no permissible ground for an election contest. "Therefore, a challenge that does not concern whether the outcome of the election was incorrect for one of the four reasons listed in the statute is, by definition, not an election contest." *Winder*, 280 S.W.3d at 557.

Justice Schenck's dissent incorrectly assumes that the term "election contest" is undefined by title 14, and it is this mistaken assumption that underlies his dissent's disregard of the statute itself and controlling precedent. While it is true that title 14 includes no separate definitional provisions, section 221.003 provides an unequivocal answer to the meaning of "election contest." An election contest is an action "to ascertain whether the outcome of the contested election . . . is not the true outcome because" "illegal votes were counted"; or "an election officer or other person officially involved in the administration of the election . . . prevented eligible voters from voting," "failed to count legal votes," or "engaged in other fraud or

illegal conduct or made a mistake." TEX. ELEC. CODE § 221.003(a). Like the court in *Winder*, I conclude that unless one of these grounds forms the basis of the lawsuit, it is not an election contest within the meaning of title 14. *Winder*, 280 S.W.3d at 557.

Nevertheless, Justice Schenck's dissent necessarily misconstrues title 14 by asserting that the general provisions of chapter 221, in some unexplained way, operate extraterritorially to encompass disputes over the entire electoral process, and not just those delineated in section 221.003(a) of title 14. To reach this conclusion, the dissent disregards controlling precedent—of the supreme court and this Court— that an election contest is a "special proceeding," *Blum*, 997 S.W.2d at 262, that operates "only to the extent authorized by statute," *Nichols*, 97 S.W.3d at 883.

Ignoring recent supreme court and appellate court case law established after the passage of the election contest provisions of our current election code, Justice Schenck boldly asserts the panel opinion was "in keeping with long and unbroken precedent of the Texas Supreme Court," yet cites only one supreme court case, *Dickson v. Strickland*, 265 S.W. 1012 (Tex. 1924), to support his flawed proposition that provisions of title 14 emanate from and beyond the boundaries of title 14 to form some sort of penumbral overlay on the entire election code. *Dickson* pre-dates our current statutory scheme by more than 60 years, and it does not support the application of the term "election contest" that governs us today.

Justice Schenck's dissent also cites *Bickley v. Lands*, 288 S.W. 514 (Tex. App.—Dallas 1926, no writ), as support. Yet, *Bickley*, like *Dickson*, pre-dates our current statutory scheme by six decades, and the action in *Bickley* occurred after the vote in question and did not involve the no-default provision of our current law. *Ellis v. Vanderslice*, 486 S.W.2d 155 (Tex. App.—Dallas 1972, no writ), also pre-dates current law and involved a local option election governed by state liquor laws. *Id.* at 156–57. It did not address the question presented here. *Polk v. Vance*, 244 S.W.2d 869 (Tex. App.—Dallas 1951, no writ), also pre-dates the current legislative enactment and did not address the issue at hand. *Id.* at 870. None of these cases has anything to do with the question before us, namely: Does the no-default provision of title 14 apply to suits that are not subject to title 14? Justice Bridges' dissent likewise ignores controlling precedent. His dissent cites not one case that post-dates the enactment of our current law. Strikingly, both dissents ignore every authoritative pronouncement issued after the enactment of our current code provisions governing election contests. All in all, both Justice Schenck's and Justice Bridges' dissents manifest a lack of fidelity to principles of statutory construction, higher court authority, our precedent, and the record—the latter of which reveals that *no party in this case argued that the no-default provision of title 14 applied in these circumstances*.

Both dissents disregard the statute. They fail to read title 14 as a whole, which makes clear that an "election contest" is an umbrella term used to describe five

specific types of contests recognized in title 14. An election contest is either a "contest for office" under chapter 232, a "contest on [a] measure" under chapter 233, a "contest for state senator or representative" under chapter 241, a "contest for constitutional executive office" under chapter 242, or a "contest for presidential electors" under chapter 243. Chapter 221 ("General Provisions"), contained in subtitle A, applies to all five types of election contests. The state senate and house are vested with exclusive jurisdiction (jointly or separately, depending upon the nature of the contest) over contests involving certain general and special elections; the governor has exclusive jurisdiction over contests involving presidential electors; and the district courts have exclusive jurisdiction over all other contests for office, as well as jurisdiction over contests on non-advisory measures. TEX. ELEC. CODE § 221.002(a)–(c).[3]

Subtitle B of title 14, which consists of chapters 231, 232 and 233, provides procedures and requirements for election contests (whether for office or on a measure) filed in the district court. Each succeeding chapter relating to the various types of contests, found in Subtitle C ("Contests in Other Tribunals"), provides specific procedures and requirements for the resolution of such contests. For

---

[3] A full reading of title 14 reveals the district court has exclusive jurisdiction over all election contests relating to ballot measures that are not for advisory purposes only, and all contests for office, other than for general elections involving constitutional executive offices, general and special elections for state senator and state representative, and elections for presidential electors. Expressly excluded from title 14's purview are general and special elections for the offices of U.S. Senator and Representative, presidential primary elections, and elections on measures that are merely advisory. TEX. ELEC. CODE. § 221.001(1)–(3).

example, in a contest for state senator or representative, a person contesting an election must file "the petition with the secretary of state not later than the seventh day after the date the official result . . . is determined," but not earlier than "the day after the date of the . . . election." *Id*. § 241.003(b), (c). General election contests for constitutional executive offices must comply with the deadlines set forth in chapter 241. *Id*. § 242.002(a). Contests for presidential electors must be filed with the secretary of state "not later than the 10th day after the date the official result of the . . . election is determined," but not earlier than "the day after the date of the . . . election." *Id*. § 243.003(b), (c).

The term "election contest" is clearly defined in title 14, and a "contest for office" is not something apart from an "election contest," as Justice Schenck's dissent necessarily implies. A contest for office *is* an election contest.

Neither by timing nor subject matter was the underlying action an election contest. O'Brien is thus correct that the panel erred in concluding her suit was an election contest and relying on the no-default provision of title 14 of the election code to order the trial court to vacate the default judgment. Rather, O'Brien's was a typical civil action seeking declaratory and injunctive relief to which the no-default provision of section 221.004 is inapplicable.[4]

---

[4] I likewise do not endorse Justice Schenck's conclusion that the issue before us is moot because of the parties' resolution, but I need not address it in detail here. It is noteworthy, however, that Justice Schenck concludes an exception to the mootness doctrine does not exist because the dispute is not likely to recur *between the same parties*. Assuming this is a requirement for application of the exception to the mootness

–9–

## III.

While the panel relied on an incorrect underpinning for its decision, the result it reached in conditionally granting the writ nevertheless was correct for the following reason: the trial court's default judgment granting O'Brien's request for declaratory and injunctive relief was void because the court's final determination came *before* the matter was ripe.

Ripeness implicates subject matter jurisdiction. *Perry v. Del Rio*, 66 S.W.3d 239, 250–51 (Tex. 2001) (orig. proceeding); *Patterson v. Planned Parenthood*, 971 S.W.2d 439, 442 (Tex. 1998). While a premature claim may become ripe as a result of a subsequently occurring event (just like mootness may develop for the same reason), *Perry*, 66 S.W.3d at 251, O'Brien's claims never became ripe, and therefore justiciable, prior to their adjudication by the trial court. "The ripeness doctrine serves to avoid premature adjudication." *Patterson*, 971 S.W.2d at 442; *see also Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 852 (Tex. 2000).[5]

---

doctrine, the reality is general election cases like this one are almost always between or involve the Republican and Democratic parties, despite the names of the candidates.

[5] In theory, O'Brien's claims against Hutcheson might have ripened once the election was completed, had her claims remained pending and not been adjudicated in advance of the election. As it turns out, those claims nevertheless would have become moot because O'Brien won the election. It is notable, however, that had Hutcheson won the election, O'Brien's suit, if not amended, would face the challenge that O'Brien lacked standing. *See Norville v. Parnell*, 118 S.W.3d 503, 504 (Tex. App.—Dallas 2003, pet. denied) (losing general election candidate lacks standing to challenge winner's certification for office on ineligibility grounds). Despite this, Justice Bridges' generalized intimation that challenges based on residency do not survive an election is wrong. *See, e.g., McDuffee v. Miller*, 327 S.W.3d 808 (Tex. App.—Beaumont 2010, no pet.) (challenge to voter residency in an election contest, pursuant to Texas Election Code section 221.003(a)); *State v. Wilson*, 490 S.W.3d 610 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (challenge to residency of elected candidate in quo warranto proceeding); s*ee also* TEX. CIV. PRAC. & REM. CODE §§ 66.001–.003 (governing quo warranto proceedings).

At the time the judgment was signed, O'Brien's claims had not matured. If O'Brien was entitled to the relief she sought, it clearly was contingent on the victory of her opponent in an election that had yet to occur. When an injury is contingent on uncertain future events and the injury itself is only hypothetical and may not occur at all, the court lacks jurisdiction to decide the matter. *Gibson*, 22 S.W.3d at 852.[6] The case before us is exactly the type of case for which the ripeness doctrine was intended. Thus, the trial court was without jurisdiction over O'Brien's claims at the time it signed the no-answer default judgment.[7]

---

[6] The ripeness analysis may permit a party to demonstrate a concrete injury "is likely to occur" and thereby survive a jurisdictional challenge, *Gibson*, 22 S.W.3d at 852, but there is no suggestion in the record that Hutcheson was likely to win the upcoming election or that her swearing-in was imminent. In other words, there was no direct or immediate threat of the harm complained of by O'Brien. At the time the trial court adjudicated her claims, it was only speculative that an injury would occur. *Id*.

[7] Although the panel's decision turned on the erroneous application of the no-default provision of title 14, Justice Bridges theorizes that "[a]rguably, the case was moot from the moment O'Brien filed her petition in district court because the election process had already begun." What Justice Bridges fails to note, however, is that O'Brien's suit sought no relief affecting the election process. Indeed, her previous action seeking that relief had been dismissed as moot. *In re O'Brien*, 2018 WL 4141484, at *2. Rather, O'Brien's current action sought relief based on events that *might* occur *after* the election, namely the certification or swearing-in of her opponent. Thus, since the relief sought was based on an unknown future outcome, it is ripeness, not mootness, that is implicated here. What either dissent fails to acknowledge, however, is that O'Brien faced a jurisdictional impediment at every turn. If she sought to remove Hutcheson from the ballot based on residency, the case would be moot because of timing, which is what we determined in O'Brien's prior action; if she sought in a pre-election suit to bar her opponent from taking office in the event her opponent won (which is what she sought here), her action would be unripe; and, if her opponent had won and O'Brien had challenged Hutcheson's certification or swearing-in based on residency, then O'Brien would arguably lack standing to do so. *See Norville*, 118 S.W.3d at 504. Thus, if there is an arguable alternative to the ripeness analysis, it is one of standing, not mootness. The panel erred in basing its determination on the inapplicable no-default provision of title 14, rather than on the proper and applicable jurisdictional bar. By doing so, the panel opinion created significant practical mischief separate and apart from its legal misinterpretation. By removing the default judgment option from a trial court's arsenal, the panel opinion would insure that many meritorious election-related cases to which there is no legitimate defense would go forward and instill even more uncertainty into the election process.

**IV.**

A judgment rendered without jurisdiction is void. *Browning v. Placke*, 698 S.W.2d 362, 363 (Tex. 1985) (orig. proceeding) (per curiam) (citing *Austin Indep. Sch. Dist. v. Sierra Club*, 495 S.W.2d 878, 881 (Tex. 1973)); *see also Gulf C.&S.F. Ry. Co. v. Rawlings*, 16 S.W. 430, 431 (Tex. 1891). Mandamus will lie to vacate, set aside or prevent the enforcement of a void judgment or order. *See Dikeman v. Snell*, 490 S.W.2d 183, 186 (Tex. 1973) (orig. proceeding); *State v. Ferguson*, 125 S.W.2d 272, 274 (Tex. 1939) (orig. proceeding); *see also In re Florance*, 377 S.W.3d 837, 840 (Tex. App.—Dallas 2012, orig. proceeding). Generally, mandamus relief is appropriate "only if the court clearly abused its discretion and the party has no adequate remedy by appeal." *In re Sw. Bell Tel. Co.*, 35 S.W.3d 602, 605 (Tex. 2000) (orig. proceeding). Signing a void order is an abuse of discretion. *Id.* If the challenged order is void, the relator need not show he or she has no adequate appellate remedy. *Id.*; *In re Vaishangi, Inc.*, 442 S.W.3d 256, 261 (Tex. 2014) (orig. proceeding) (per curiam). Accordingly, relators were entitled to relief on this basis, but not on the basis relied on by the panel.

/Ken Molberg//
_____
KEN MOLBERG
JUSTICE

181333CF.905

Joined by Burns, C.J., Osborne, Partida-Kipness, Reichek, Nowell, and Carlyle, JJ.

–12–