Edward J. BLUM, Petitioner,

v.

Bob LANIER, Mayor of the City
of Houston, and the City of
Houston, Respondents.

No. 98–0256.

Supreme Court of Texas.

Argued April 8, 1999.

Decided July 1, 1999.

J. Preston Wrotenbery, Kimaberly R. Stamp, Alan N. Magenheim, Kevin D. Jewell, Houston, for Petitioner.

Patrick Zummo, Anthony W. Hall, Jr., Gene L. Locke, Bertrand L. Pourteau, II, Helen M. Gros, Houston, for Respondents.

Chief Justice PHILLIPS delivered the opinion for a unanimous Court.

In an election to amend a city charter, the plaintiff attempted to enjoin the city from using allegedly misleading language on the ballot to describe the proposed amendment. While we do not address the merits of plaintiff's claim at this time, we must resolve two jurisdictional questions: (1) whether a district court has jurisdiction to enjoin a city from using allegedly vague and misleading language on the ballot describing the proposed amendment to the city charter initiated by petition, and (2) whether a qualified voter who signs the petition that initiates the election has standing to seek the injunction against the ballot proposition the city drafted.

The trial court, concluding that it lacked subject matter jurisdiction over this aspect of the election, declined to consider the plaintiff's request for injunctive relief. The court of appeals affirmed the dismissal on slightly different grounds, concluding that a voter who signed the petition lacked standing to seek injunctive relief against the city.[1] — S.W.2d ——. We disagree with both lower courts and answer the two questions "yes." We therefore reverse the judgment of the court of appeals and remand the cause to the trial court for further proceedings.

The Local Government Code authorizes qualified voters of a municipality to propose amendments to the city's charter. *See* Tex. Loc. Gov't Code § 9.004(a). Under this authority, Edward J. Blum and over 20,500 other registered voters in the City of Houston signed a petition that proposed to amend the City's charter to "end preferential treatment" in the City's public employment and contracting. In full, the proposed charter amendment provided:

(a) The City of Houston shall not discriminate against, or grant preferential treatment to, any individual or group on the basis of race, sex, color, ethnicity, or national origin in the operation of public employment and public contracting.

(b) This section shall apply only to action taken after the section's effective date.

(c) Nothing in this section shall be interpreted as prohibiting bona fide occupational based on gender qualifications which are reasonably necessary to the normal operations of a particular government activity.

(d) Nothing in this section shall be interpreted as invalidating any court order or consent decree which is in force as of the effective date of this section.

(e) Nothing in this section shall be interpreted as prohibiting action which must be taken to establish or maintain eligibility for any federal program, where ineligibility would result in a loss of federal funds to the city.

(f) For the purposes of this section, "city" shall include, but not necessarily be limited to, the city itself, and any other political subdivision or governmental instrumentality of or within the city.

(g) The remedies available for violations of this section shall be the same, regardless of the injured party's race, sex color, ethnicity, or national origin, as are otherwise available for violations of then existing Texas anti-discrimination law.

---

1. The court of appeals' opinion was originally designated not for publication, but we have ordered it to be published. *See* Tex.R.App. P. 47.3(d).

(h) This section shall be self-executing. If any part or parts of this section are found to be in conflict with state law, the Texas Constitution, federal law or the United States Constitution, the section shall be implemented to the maximum extent that federal law and the United States Constitution permit. Any provision held invalid shall be severable from the remaining portion of this section.

On October 1, 1997, the Houston City Council adopted an ordinance under state law calling a special election on the proposed charter amendment for November 4, 1997, the same day as the City's general election. This ordinance recited the entire proposed charter amendment and provided the following description of the amendment for use on the ballot:

> Shall the Charter of the City of Houston be amended to end the use of Affirmative Action for women and minorities in the operation of City of Houston employment and contracting, including ending the current program and any similar programs in the future?

Blum objected to this description and immediately sought mandamus and injunctive relief in district court against the Honorable Bob Lanier, Mayor,[2] and the City of Houston. In his lawsuit, Blum asked the court to direct the City to submit the proposed charter amendment to the voters using paragraph (a) of the proposed amendment as the ballot description. Alternatively, he sought to enjoin the City from using "vague, indefinite language, which fails to give voters fair notice of the nature and substance of the proposed charter amendment." The City responded with a plea to the jurisdiction, alleging that the trial court lacked jurisdiction to enjoin any part of the election process. Furthermore, the City argued that mandamus was inappropriate because Blum had an adequate remedy at law through an election contest. The trial court agreed that it lacked jurisdiction to issue a temporary injunction, but concluded that it had jurisdiction to consider Blum's petition for writ of mandamus. The court thereafter denied mandamus relief, signing its order on October 8, 1997.

Blum filed an accelerated appeal, complaining only about the trial court's order denying injunctive relief for lack of subject matter jurisdiction. The City moved to dismiss the appeal on October 20, 1997, urging that Blum's petition for injunctive relief was moot because the election had begun. *See, e.g., Skelton v. Yates,* 131 Tex. 620, 119 S.W.2d 91, 91–2 (1938)(election challenge moot once absentee voting has begun). The court of appeals denied this motion, concluding that the appeal was not moot under the "capable of repetition yet evading review" exception to the mootness doctrine. The court of appeals on its own motion, however, determined that Blum lacked standing to enjoin the City and affirmed the trial court's judgment for this reason. *See generally Texas Ass'n of Bus. v. Texas Air Control Bd.,* 852 S.W.2d 440, 443–45 (Tex.1993)(standing is an essential, unwaivable component of subject matter jurisdiction which court should consider on its own motion).

■ To establish standing in this case, Blum must demonstrate that he possesses an interest distinct from the general public such that the City's actions have caused him some special injury. *See Hunt v. Bass,* 664 S.W.2d 323, 324 (Tex.1984). In his trial court pleadings, Blum alleged that he was co-chair of the Houston Civil Rights Initiative, a private, nonprofit organization that spearheaded the petition drive. Although Blum did not allege in the trial court that he actually signed the petition himself, the City concedes in its brief to this Court that he was a signatory. The City argues, however, that the initiative petition does not otherwise distinguish

---

**2.** During this appeal, Mayor Lanier's term expired, and he was succeeded by the Honorable Lee P. Brown.

Blum from any other petition signer and that signing the petition alone is not sufficient to give him a justiciable interest in the controversy. We disagree.

■ Citizens who exercise their rights under initiative provisions act as and "become in fact the legislative branch of the municipal government." *Glass v. Smith,* 150 Tex. 632, 244 S.W.2d 645, 649 (1951). In this context, we have recognized that the signers, as sponsors of the initiative, have a justiciable interest in seeing that their legislation is submitted to the people for a vote. *See id.* at 648, 653–54. We have issued and affirmed writs of mandamus to compel municipal authorities to perform their ministerial duties with respect to initiatory elections. *See Coalson v. City Council of Victoria,* 610 S.W.2d 744, 745–46 (Tex.1980); *Glass,* 244 S.W.2d at 648, 653–54. We thus conclude that those qualified voters who sign the petition have a justiciable interest in the valid execution of the charter amendment election, *see Glass,* 244 S.W.2d at 648, and as such have an interest in that election distinct from that of the general public. *See Hunt,* 664 S.W.2d at 324.

The initiative in this case was conducted under section 9.004 of the Local Government Code. That section grants the qualified voters of a municipality the right to petition their governing body to amend its charter. When the requisite number of qualified citizens sign such a petition, the municipal authority must put the measure[3] to a popular vote. *See* TEX. LOC. GOV'T CODE § 9.004(a). Although the petitioners draft the charter amendment, the municipal authority generally retains discretion to select the form of the ballot proposition[4] that describes the proposed amendment. In this regard, section 52.072(a) of the Election Code provides:

Except as otherwise provided by law, the authority ordering the election shall prescribe the wording of a proposition that is to appear on the ballot.

Blum concedes in this Court that the City had the right to choose the ballot language under this section, but not the right to mislead the public about the nature of the proposed charter amendment. Although no statute or ordinance prescribes the proposition's form in this instance, Blum argues that the City's choice of language is nonetheless limited by the common law, which requires that the proposition identify the measure "with such definiteness and certainty that the voters are not misled." *Reynolds Land & Cattle Co. v. McCabe,* 72 Tex. 57, 12 S.W. 165, 165–66 (1888); *see also Bischoff v. City of Austin,* 656 S.W.2d 209, 212 (Tex.App.—Austin 1983, writ ref'd n.r.e.), *cert. denied* 466 U.S. 919, 104 S.Ct. 1699, 80 L.Ed.2d 172 (1984)(same); *Wright v. Board of Trustees of Tatum Indep. Sch. Dist.,* 520 S.W.2d 787, 792 (Tex.Civ.App.—Tyler 1975, writ dism'd)(proposition should constitute a fair portrayal of the chief features of the measure in words of plain meaning so that it can be understood). The City responds that even assuming for the sake of argument that its proposition was insufficient, Blum still was not entitled to a mandamus or an injunction in the trial court because he had an adequate remedy at law in the form of an election contest under Chapter 233 of the Election Code.

■ An election contest is a special proceeding created by the Legislature to provide a remedy for elections tainted by fraud, illegality or other irregularity. *De Shazo v. Webb,* 131 Tex. 108, 113 S.W.2d 519, 524 (1938). A party cannot file such a suit until after the election. *See* TEX. ELEC.CODE § 233.006(a). Because Blum or any qualified voter in the City of Houston could have challenged the City's allegedly misleading proposition through an election

---

**3.** The Election Code defines a "measure" as "a question or proposal submitted in an election for an expression of the voters' will." TEX. ELEC.CODE § 1.005(12).

**4.** The Election Code defines a "proposition" as "the wording appearing on a ballot to identify a measure." TEX. ELEC.CODE § 1.005(15).

contest, see TEX. ELEC.CODE § 233.002; see also, e.g., Wright, 520 S.W.2d at 792, the City concludes that this was Blum's only remedy.

Blum disagrees, responding that this Court has approved the use of mandamus, for example, to compel public officials to comply with their ministerial duties in election matters. Thus, when public officials have refused to call an election required by law, this Court has compelled them to act. See, e.g., Anderson v. City of Seven Points, 806 S.W.2d 791, 793 (Tex. 1991); Coalson, 610 S.W.2d at 747; Glass, 244 S.W.2d at 648. Although mandamus is not available to control discretionary acts such as the City's choice of language here, Blum argues that injunctive relief is appropriate in this case because the City has violated the law and effectively subverted the election by drafting a proposition that misled, rather than informed, the voters. Blum concludes that an injunction against the City's misleading proposition was his only means of preserving an informed submission of the proposed charter amendment at the called election.[5]

The City responds that the trial court correctly dismissed Blum's request for injunctive relief because a district court cannot enjoin an election. The City submits that Blum's injunction would necessarily have prevented the election from taking place as scheduled because the proposed charter amendment could not be submitted to the voters without the ballot proposition.

■ We agree that Blum had no right to enjoin the scheduled election. It is well settled that separation of powers and the judiciary's deference to the legislative branch require that judicial power not be invoked to interfere with the elective process.[6]

■ Blum, however, did not seek to enjoin the election itself, but only to prevent the City from using what he alleged to be a vague and misleading ballot proposition to describe the proposed charter amendment. The City is correct that a possible consequence of an injunction against some aspect of the ordinance calling the election could be postponing the election. But what is possible is not necessarily inevitable. An injunction that delays the election would be improper, but an injunction that facilitates the elective process may be appropriate. Cf. Ellis v. Vanderslice, 486 S.W.2d 155, 159–60 (Tex.Civ.App.—Dallas 1972, no writ)(courts may act to facilitate election process but injunctions typically interfere with that process). In short, if the matter is one that can be judicially resolved in time to correct deficiencies in the ballot without delaying the election,

---

**5.** Blum also contends that he is entitled to injunctive relief under section 273.081 of the Election Code, which provides:

> A person who is being harmed or is in danger of being harmed by a violation or threatened violation of this code is entitled to appropriate injunctive relief to prevent the violation from continuing or occurring.

TEX. ELEC.CODE § 273.081. Blum, however, has not identified any provision of the Election Code violated by the City's actions here.

**6.** See City of Austin v. Thompson, 147 Tex. 639, 219 S.W.2d 57, 59 (1949)(district court is without authority to enjoin even a void election); Ex parte Barrett, 120 Tex. 311, 37 S.W.2d 741, 742 (1931)(injunction against holding an election is outside the general scope of judicial power); City of Dallas v. Dallas Consol. Elec. St. Ry. Co., 105 Tex. 337, 148 S.W. 292, 295 (1912)(declined to enjoin canvassing of votes on ground that election was illegal); Leslie v. Griffin, 25 S.W.2d 820, 821–22 (Tex. Comm'n App.1930, judgm't adopted)(same); Winder v. King, 1 S.W.2d 587, 587–88 (Tex. Comm'n App.1928, judgm't adopted)(refused to enjoin official from calling election); City of McAllen v. Garza, 869 S.W.2d 558, 561 (Tex.App.—Corpus Christi 1993, writ denied)(refused to enjoin allegedly void election); Kolsti v. Guest, 565 S.W.2d 556, 557 (Tex.Civ.App.—Austin 1978, no writ)(declined to enjoin official from placing referendum on ballot); Ellis v. Vanderslice, 486 S.W.2d 155, 159–60 (Tex.Civ.App.—Dallas 1972, no writ)(declined to enjoin official from certifying petition for local option election); Stroud v. Stiff, 465 S.W.2d 407, 408 (Tex.Civ.App.—Amarillo 1971, no writ)(refused to enjoin city for proceeding under election resolution).

then injunctive relief may provide a remedy that cannot be adequately obtained through an election contest.

A misleading ballot proposition that requires an election contest and a second election delays the timely resolution of the proposed charter amendment no less than, and perhaps even more than, an improper injunction. Election results are often influenced by unique and complex factors existing at a particular point in time, and those who petition for an election may have strong reasons for desiring a particular election date. The Local Government Code implicitly recognizes this interest by requiring charter amendment elections to be set promptly. Tex. Loc. Gov't Code § 9.004(b).[7] If defective wording can be corrected through injunctive relief, a remedy will be provided that is not available through a subsequent election contest. We accordingly hold that a qualified voter who signs an initiative petition has standing to seek, and the trial court has jurisdiction to issue, an injunction forbidding the City's use of a misleading ballot proposition so long as the injunction does not operate to delay or cancel the called election.

■ By cross-point, the City argues that the court of appeals erred in applying the "capable of repetition yet evading review" exception to the mootness doctrine because starting the election mooted this appeal. The City submits that election schedules will often moot election injunctions but that this reality does not constitute an exception to the mootness doctrine. We disagree.

■ The "capable of repetition yet evading review" exception to the mootness doctrine applies when "the challenged act is of such short duration that the appellant cannot obtain review before the issue becomes moot." *General Land Office v. OXY U.S.A., Inc.,* 789 S.W.2d 569, 571 (Tex. 1990). There must also be a reasonable expectation that the same action will occur again if the issue is not considered. *Weinstein v. Bradford,* 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975). Contrary to the City's position, the doctrine has been applied to pending election matters. *See, e.g., Bejarano v. Hunter,* 899 S.W.2d 346, 351 (Tex.App.—El Paso 1995, orig. proceeding).

Before granting the petition in this case, we asked the parties to report on the status of the case that remained in the trial court. The parties reported that the proposed charter amendment was defeated at the polls and that Blum thereafter amended his pleadings to include a contest of that election. We are further advised that the trial court has indicated by letter that it will sustain the contest and order a new election on the initiative. Because the City controls the proposition language and to some extent may also dictate the amount of time the initiative sponsors will have to seek judicial relief prior to the election, a repetition of the events in this case is possible. Accordingly, we agree with the court of appeals that the "capable of repetition yet evading review" doctrine applies here. If the trial court orders a new charter amendment election, as it has indicated it will, Blum or any other signatory to the petition may seek to enjoin the City from proceeding with a ballot proposition that allegedly misleads the electorate about this proposed amendment.

Again, we express no opinion on the merits of the underlying dispute. Our decision today is limited to the jurisdictional issues. Because the court of appeals erred in this regard, we reverse its judgment and remand the cause to the trial court for

---

7. Section 9.004(b) provides:

The ordinance ordering the election shall provide for the election to be held on the first authorized uniform election date prescribed by the Election Code or on the earlier of the date of the next municipal general election or the presidential general election. The election date must allow sufficient time to comply with other requirements of law and must occur on or after the 30th day after the date the ordinance is adopted.

further proceedings consistent with this opinion.