**In re Michael LINK, Relator.**

No. 12–00–00278–CV.

Court of Appeals of Texas, Tyler.

Oct. 6, 2000.

---

**4.** Rule 53(d) was the predecessor to current rule 34.6(c). *Compare* TEX. R. APP. P. 53(d) (Vernon 1997, revised 1997) *with* TEX. R. APP. P. 34.6(c).

**150**

Melvin D. Whitaker, Stuart L. Whitaker, Palestine, for relator.

James P. Allison, Austin, for respondent.

Panel consisted of DAVIS, C.J., HADDEN, J., and WORTHEN, J.

LEONARD DAVIS, Chief Justice.

This original mandamus proceeding, brought under Texas Election Code section 273.061, challenges the Anderson County Commissioners Court's ("Commissioners") refusal to call an election pursuant to a petition filed under Texas Local Government Code section 152.072 by Relator Michael Link ("Link") to increase the salaries of the Anderson County Sheriff's Department. We grant the petition for writ of mandamus.

### THE STATUTE AT ISSUE: TEXAS LOCAL GOVERNMENT CODE SECTION 152.072

Before setting forth the facts which led to the commencement of this original proceeding, we first consider the statute from which this original proceeding stems. Section 152.072(a) authorizes the qualified voters of a county with a population greater than 25,000 to petition the commissioners court of their county to increase the minimum salary of each member of the sheriff's department. TEX. LOC. GOV'T CODE ANN. § 152.072 (Vernon 1999).[1]

---

**1.** All further section number references contained in this opinion refer to the current edition of the Texas Local Government Code unless otherwise specified.

Subsection (b) sets forth the required content of the petition. It must:

(1) state the amount of the proposed minimum salary for each rank, pay grade, or classification;

(2) state the effective date of the proposed salary increase;

(3) designate five qualified voters to act as a committee of petitioners authorized to negotiate with the commissioners court under Subsection (g); and

(4) be signed by a number of qualified voters equal to at least 25 percent of the number of voters who voted in the most recent countywide election for county officers.

*Id.* Subsection (c) sets forth the responsibilities of the commissioners court once a petition has been filed. Subsection (c) provides as follows:

(c) When a petition is filed under this section, the commissioners court *shall:*

(1) adopt the proposed minimum salary stated in the petition;

(2) offer an alternative minimum salary proposal under Subsection (g); or

(3) call an election on the proposed minimum salary as provided by this section.

*Id.* (emphasis added). Under subsection (d) if the commissioners court opts to hold an election, it "shall be held on the first authorized uniform election date under Chapter 41, Election Code: (1) that occurs after the 65th day after the date the petition was filed; and (2) on which an election is scheduled to be held throughout the county for other purposes." *Id.*

### THE UNDERLYING DISPUTE

The undisputed facts are as follows. On or before August 28, 2000, Link, a member of the Anderson County Sheriff's Depart-

ment, along with other members of that department, circulated a section 152.072 petition seeking to increase the minimum salary of each member of the sheriff's department. They obtained the signatures of 3,219 qualified voters. On August 28, 2000, Link submitted the petition to the Commissioners. A copy of the petition, excluding signatures, is attached to this opinion as "Appendix A." On August 31, the Tax–Assessor Collector for Anderson County certified that the qualified signatures on the petition constituted more than twenty-five percent of the voters in the last countywide election for county officers.[2] That same day, the Commissioners voted to delay action on the petition and retain an attorney to review the petition and make recommendations concerning it. On September 8, 2000, the Commissioners again convened and unanimously voted to take no action on the petition stating that the petition was legally insufficient, and thus refused to call an election for November 7th on the petition. Thereafter, on September 18, 2000, Link filed the instant original proceeding seeking a writ of mandamus to compel the Commissioners to call an election on the minimum salary plan contained in his petition.

### PREREQUISITES FOR A WRIT OF MANDAMUS

 In the instant case, our jurisdiction to entertain this original proceeding issues from Texas Election Code section 273.061, which authorizes the supreme court and courts of appeals to issue writs of mandamus to compel the performance of any duty imposed by law in connection with holding an election or a political party convention. TEX. ELEC.CODE ANN. § 273.061 (Vernon 1986). "Before a writ of mandamus will issue, the Relator must have a clear legal right to performance of the act he seeks to compel; further, the

---

**2.** The sufficiency of the number of qualified voters' signatures is not disputed.

duty of the officer sought to be compelled must be one clearly fixed and required by the law, or the writ will not issue." *Reese v. Commissioners' Court of Cherokee County,* 861 S.W.2d 281, 283 (Tex.App.— Tyler 1993, no writ) *citing Oney v. Ammerman,* 458 S.W.2d 54 (Tex.1970). In a mandamus proceeding, we have no authority to resolve disputed factual issues. *Brady v. Fourteenth Court of Appeals,* 795 S.W.2d 712, 714 (Tex.1990) (orig.proceeding); *Strachan v. Lanier,* 867 S.W.2d 52 (Tex.App.—Houston [1st Dist.] 1993, orig. proceeding).

### DID THE COMMISSIONERS VIOLATE A DUTY IMPOSED BY LAW?

█ Link asserts that because he filed a petition that met each of the four requirements under section 152.072 and the Commissioners neither accepted the petition nor offered an alternative minimum salary proposal, the Commissioners had a duty imposed by law to place the petition's proposed minimum salary increases before the voters at the November 7, 2000 general election. The Commissioners, rejoin that the petition was legally invalid because it exceeded the scope of section 152.072. They also assert that because the petition's express terms stated that it was to be submitted for an election "without alteration or amendment," they were precluded from offering an alternative or modified salary proposal. Link, however, asserts that by "invalidating" the petition, the Commissioners have taken a tack not authorized by section 152.072(c).

Case law directly pertinent to the issue before us is limited. The Waco Court of Appeals faced a mandamus proceeding involving the election provision of section 152.072(c) in *In re Bailey,* 975 S.W.2d 430

(Tex.App.—Waco 1998, orig. proceeding). There, a petition under section 152.072 containing the requisite number of signatures was filed in the commissioners court. In response, the commissioners court offered an alternative salary proposal. That proposal, however, was rejected, so the commissioners court voted to place a portion of the petition's proposed salary plan on the ballot. The relator sought mandamus relief asserting that he was entitled to have the petition's salary plan placed on the ballot in its entirety. The commissioners court, however, argued that the petition sought to set longevity pay, which was not an existing method of compensation in the sheriff's department. After examining the petition and applicable statutes, the court concluded that because the petition included a scheme for longevity pay neither required nor provided by the county, the petition "arguably exceed[ed] the limits of section 152.072." The court thus denied the petition on the basis that it could not say the commissioners court had "a clear duty to act." *Id.,* at 432.

*Arenas v. Bd. of Comm'rs of McAllen,* 841 S.W.2d 957 (Tex.App.—Corpus Christi 1992, orig. proceeding) also provides guidance. There, a petition to increase the minimum salaries of police officers, supported by the requisite number of signatures, was filed with the city secretary.[3] The city commissioners thereafter met and, on the advice of counsel, rejected the petition because it went beyond the statutory requirements of proposing minimum salaries for existing police officers and for non-existent classifications of police officers. It is undisputed that the city commissioners took none of the three alternatives available to them under the statute, *i.e.* accept the petition, offer an alternative

---

**3.** Section 141.034 of the Texas Local Government Code under which the petition was filed, is identical to section 152.072 in terms of petition requirements and the city's alternatives for acting on the petition.

proposal, or put the petition to an election. Arenas, the president of the police officers' association, sought mandamus relief. The court of appeals noted that because the city commissioners took neither of the first two options, their only remaining choice was to call the election. *Id.*, at 959. It then explained that the petition was sufficient to require "some action" by the city. In so doing, it employed the following reasoning:

> We believe that the petition is sufficiently proper to require some action by respondents. It is clear that the Legislature employed the term 'minimum salary' in specifying the kind of pay for which increases could be petitioned. The petition submitted to the people did petition for an increase in minimum salaries. The fact that it may also have petitioned for other than minimum increases does not give respondents the right to ignore it. The power of initiative and referendum is the exercise by the people of a power reserved to them, and not the exercise of a right granted. *Coalson v. City Council of Victoria*, 610 S.W.2d 744 (Tex.1980). We agree that in this case the petition may well request more than a 'proposed minimum salary.' *However, we do not agree that this means that the respondents may totally ignore the petition.* Were we to hold otherwise, we would be placing the official's duty to examine the petition for minute defects ahead of the right for the public to decide the issue.... *Respondents are not given unbridled discretion to do nothing in the face of a petition properly filed.*

*Id.* (emphasis added). Although it expressed no opinion concerning whether the statute would bind the city only to the proposed minimum salary portion of the petition in the event there was a favorable vote, it nevertheless granted the petition for writ of mandamus. *Id.*

Although at first glance, the courts in *Arenas* and *Bailey* appear to have reached opposite conclusions, upon closer examination, these differing results can be reconciled. In *Bailey*, the commissioners court attempted compliance with section 157.052(c) in two respects: by offering an alternate salary proposal, and when that was rejected, by seeking to put the "proposed minimum salary portion" of the petition to an election. *In re Bailey*, 975 S.W.2d 430. Conversely, in *Arenas*, the city made no attempt to comply with any of the three options under the statute: it did not accept the petition, offer an alternate salary proposal, or seek to put all or any portion of the petition to an election. It rejected the petition in its entirety and refused to take any action on it. *Arenas*, 841 S.W.2d at 959. Thus, both cases make it clear that even if the petition appears to seek a vote on matters outside the scope of the applicable minimum salary proposal statute, the governmental entity is not free to simply reject the petition; it must take some action in accordance with the statute.

In the instant case, even if as the Commissioners contend, Link's petition exceeds the scope of 152.072(a) by including more than minimum salary increases, it cannot seriously be contended that the petition does not substantially comply with the four requirements of section 152.072(b). Substantial compliance was met by the petition setting forth: (1) the amount of the proposed minimum salary for each rank, pay grade, and classification, (2) the effective date, (3) the names of a negotiating committee, and (4) the signatures of over twenty-five percent of the voters in the last election. Moreover, as noted above, the Commissioners neither accepted the petition nor offered an alternative proposal; thus, under section 152.072(c)(3), their remaining option was to call an election on the petition. Since they have not done so

in any form or fashion, we must thus conclude that in failing to call an election, the Commissioners have violated a duty imposed by law. TEX. LOC. GOV'T CODE ANN. § 152.072; *Arenas*, 841 S.W.2d at 959; *see In re Bailey*, 975 S.W.2d 430.

We understand the argument, and dilemma, of the Commissioners, but this does not excuse them from performing their ministerial duty of calling an election once presented with a petition which substantially complied with the statute. While the Commissioners may ultimately be correct that parts of the petition do not mesh well with their existing classifications and budget process, this does not excuse them from calling the election. The Commissioners acknowledged during oral argument that even under their interpretation at least part of the petition is correct and could be submitted to the voters. We are not in a position, nor do we have authority in this original proceeding, to pass on all of the possible factual arguments relating to each element of the pay increase sought. *Brady v. Fourteenth Court of Appeals*, 795 S.W.2d at 714; *Strachan v. Lanier*, 867 S.W.2d 52. Our role is to determine whether Link and the other petitioners have followed the statutory scheme entitling them to put this matter before the voters on November 7, 2000. We hold that they have. Any factual disputes can be resolved, if necessary, by agreement or by the courts at a later date as discussed hereafter. The Commissioners will not be without remedy if they are indeed correct in their interpretation, but the petitioners and voters would be without remedy if we summarily ruled that the election should not be held simply because there was a dispute as to specific portions of the petition.

The right to place an initiative directly before the voters is a right which has deep roots in our political process. It is one which takes the power to decide past the legislative process and gives it directly to the people. The legislature has done this in certain circumstances, this being one of them. The Texas Supreme Court has acknowledged this important right in *Coalson v. City Council of Victoria*, 610 S.W.2d 744 (Tex.1980) when Justice Pope writing for the court stated:

> The initiative process, which article 1170 authorizes, affords direct popular participation in lawmaking. The system has its historical roots in the people's dissatisfaction with officialdom's refusal to enact laws. 1 BRYCE, THE AMERICAN COMMONWEALTH (1st ed. 1888). It is an implementation of the basic principle of Article I, Section 2, of the Texas Bill of Rights: 'All political power is inherent in the people....' This court stated in *Taxpayers' Ass'n of Harris County v. City of Houston*, 129 Tex. 627, 105 S.W.2d 655, 657 (1937), that 'the power of initiative and referendum ... is the exercise by the people of a power reserved to them, and not the exercise of a right granted,' and that 'in order to protect the people of the city in the exercise of this reserved legislative power, such charter provisions should be liberally construed in favor of the power reserved.' *See also, Glass v. Smith*, 150 Tex. 632, 244 S.W.2d 645 (1951). The City Council's duty is clear, and its compliance with the law is ministerial in nature. The City Council's refusal to submit the proposed amendments to the vote of the people thwarts not only the legislature's mandate but the will of the public.

*Id.,* at 747. We cannot say whether the voters of Anderson County will pass the initiative, nor can we say whether all of the provisions will ever be given effect, but we can say that to deny them a timely vote on the matter would indeed "thwart not only

the legislature's mandate but the will of the public." *Id.*

## WHAT PERFORMANCE MUST WE COMPEL?

Having determined that the Commissioners have failed to perform a duty imposed by law, our next inquiry becomes: what performance must we compel? TEX. ELEC.CODE ANN. § 273.061. Must Link's petition in its entirety be submitted to the voters or are the Commissioners allowed to reform the petition to, in their view, comply with the scope of section 152.072? Although both *Bailey* and *Arenas* sidestep this issue, the supreme court's decision in *Blum v. Lanier,* 997 S.W.2d 259 (Tex. 1999) provides guidance. Although the facts and origin of the dispute in *Blum* differ from those here, the underlying principles are useful by analogy. In that case, Blum, a qualified voter who had signed a petition proposing to amend the city of Houston's charter, attempted to enjoin the city from using allegedly misleading language on the ballot to describe the proposed amendment. The court of appeals held that Blum had no standing to challenge the petition. On petition for review, however, the supreme court reversed the court of appeals' decision, holding that Blum had standing to challenge the ballot's wording and that the trial court had jurisdiction to issue an injunction forbidding the City's use of a misleading ballot where the injunction neither caused a delay in or cancelled the called election. *Id.* In determining whether Blum had an adequate remedy at law that would preclude relief by injunction or mandamus, the court noted that unlike an injunction, a party cannot file an election contest until after the election. *See* TEX. ELEC.CODE ANN. § 233.006(a) (Vernon Supp.2000). It then explained that because "separation of powers and the judiciary's deference to the legislative branch require that judicial power not be invoked to interfere with the elective process," injunctive relief was not available to enjoin the scheduled election. *Id.,* 997 S.W.2d at 263. The court, however, pointed out that Blum had not sought to enjoin the election; he had sought to prevent the City from using misleading language. In holding that injunctive relief was available for such purposes, the court reasoned:

The City is correct that a possible consequence of an injunction against some aspect of the ordinance calling the election could be postponing the election. But what is possible is not necessarily inevitable. An injunction that delays the election would be improper, but an injunction that facilitates the elective process may be appropriate. (citations omitted). In short, if the matter is one that can be judicially resolved in time to correct deficiencies in the ballot without delaying the election, then injunctive relief may provide a remedy that cannot be adequately obtained through an election contest.

A misleading ballot proposition that requires an election contest and a second election delays the timely resolution of the proposed charter amendment no less than, and perhaps even more than, an improper injunction. Election results are often influenced by unique and complex factors existing at a particular point in time, and those who petition for an election may have strong reasons for desiring a particular election date.... If defective wording can be corrected through injunctive relief, a remedy will be provided that is not available through a subsequent election contest.

*Id.,* 997 S.W.2d at 263–64.

■ We know of no reason why the reasoning in *Blum* could not have been employed in the instant case. While the basic wording of the ballot itself is statutorily established, *see* section 152.072(e), the

Commissioners have expressed serious concerns that Link's petition seeks to create new positions and a new salary structure including compensation for certification and tenure. We express no opinion as to the validity of these concerns which would require a factual inquiry and findings we are not authorized to make. *Brady,* 795 S.W.2d at 714; *Strachan,* 867 S.W.2d at 52. Under *Blum,* however, in some cases a district court can timely enjoin from inclusion on the ballot information which is not authorized by section 152.072. Here the Commissioners did not pursue this remedy. The Commissioners' remedy was not to avoid putting the petition to an election, but to have sought injunctive or declaratory relief from a court of competent jurisdiction to reform the ballot submission to comply with their interpretation of the scope of section 152.072. *Blum,* 997 S.W.2d at 263–64. It would now seem that seeking injunctive relief in such a court of competent jurisdiction is not feasible due to the close proximity of the election. This then leaves the Commissioners with the only alternative of placing the proposal in Link's petition to a vote in its entirety. If the proposal fails, it

will be a moot question. If the proposal passes and the parties cannot resolve any discrepancies by agreement, part or all of it may still be challenged by the Commissioners in a declaratory judgment action in accordance with Chapter 37 of the Texas Civil Practice and Remedies Code. *See generally Coalson v. City Council of Victoria,* 610 S.W.2d 744 (Tex.1980). Thus, the Commissioners will still have an adequate remedy at law, and the rights of the public to present this matter to the voters will have been preserved.

### CONCLUSION

For the reasons set forth herein, we hold that the Commissioners failed to perform a duty imposed by law in connection with holding an election. TEX. ELEC.CODE ANN. § 273.061 (Vernon 1986). Accordingly, we grant Relator Michael Link's petition for writ of mandamus. The Commissioners are hereby instructed to perform their duty under section 152.072 by submitting Link's Petition to Increase the Salaries for Employees of the Anderson County Sheriff's Department to the voters on November 7, 2000 in a manner consistent with this opinion.

# APPENDIX A

## PETITION TO INCREASE THE SALARIES FOR EMPLOYEES OF THE

### ANDERSON COUNTY SHERIFF'S DEPARTMENT

TO: County Judge and Commissioners Court, County of Anderson, State of Texas

We, the undersigned duly qualified voters of the County of Anderson, State of Texas, present this petition pursuant to Section 152.072, TEXAS LOCAL GOVERNMENT CODE, to the County Judge and Commissioners Court of Anderson County and respectively request the following proposition be submitted without alteration or amendment for an election to be held on the first authorized uniform election date under Chapter 41, Election Code, that occurs after the 65th day after the date the petition was filed. Petitioners request and respectively demand that such necessary action be taken at the next regular session of the Anderson County Commissioners Court to set the election date.

The proposition shall read FOR or AGAINST the following:

"Adoption of the proposed minimum salaries of the below listed employee positions for members of the Anderson County Sheriff's Department." To become effective December 1st, 2000.

| Title | CURRENT Positions | Salary | Total | Title | PROPOSED Positions | Salary | Total |
|---|---|---|---|---|---|---|---|
| Medical Staff | 2 | $ 9,000 | $ 18,000 | Medical Staff | 2 | $ 10,800 | $ 21,600 |
| Jailer | 8 | $ 15,000 | $ 120,000 | Jailer | 8 | $ 21,600 | $ 172,800 |
| Shift Sergeant | 3 | $ 16,160 | $ 48,480 | Shift Sergeants | 3 | $ 22,200 | $ 66,600 |
| Jail Sergeants | 6 | $ 20,557 | $ 123,400 | Jail Sergeants | 6 | $ 22,200 | $ 133,200 |
| Asst. Jail Super | 1 | $ 22,740 | $ 22,740 | Jail Lieutenant | 1 | $ 27,600 | $ 27,600 |
| Jail Supervisor | 1 | $ 27,992 | $ 27,992 | Jail Captain | 1 | $ 33,600 | $ 33,600 |
| Police Dispatcher | 5 | $ 16,682 | $ 83,412 | Police Dispatcher | 5 | $ 21,000 | $ 105,000 |
| Radio Supervisor | 1 | $ 18,804 | $ 18,804 | Radio Supervisor | 1 | $ 22,200 | $ 22,200 |
| Records/Warrants | 2 | $ 19,104 | $ 38,208 | Records/Warrants | 2 | $ 22,200 | $ 44,400 |
| Admin Secretary | 1 | $ 21,204 | $ 21,204 | Admin Secretary | 1 | $ 22,200 | $ 22,200 |
| Deputy 0-2 yrs | 7 | $ 23,391 | $ 163,740 | Deputy 0-2 yrs | 7 | $ 27,000 | $ 189,000 |
| Deputy 2-5 yrs | 4 | $ 24,438 | $ 97,752 | Deputy 2-5 yrs | 4 | $ 28,200 | $ 112,800 |
| Deputy 5+ yrs | 5 | $ 25,273 | $ 126,364 | Deputy 5+ yrs | 5 | $ 30,000 | $ 150,000 |
| Sergeant/ Invest | 5 | $ 25,526 | $ 127,632 | Sergeant Investigator | 5 | $ 31,800 | $ 159,000 |
| Lieutenant | 1 | $ 26,136 | $ 26,136 | Lieutenant | 1 | $ 33,000 | $ 33,000 |
| Captain | 1 | $ 26,136 | $ 26,136 | Captain | 1 | $ 33,600 | $ 33,600 |
| Chief Deputy | 1 | $ 31,080 | $ 31,080 | Chief Deputy | 1 | $ 36,000 | $ 36,000 |
| 52 FTEs | | | | 52 FTEs | | | |
| Current Salary | | | $ 1,121,080 | Proposed Salary Totals | | | $ 1,362,600 |
| | | | | Sheriff Office Salary Impact | | $ 241,520 | |

### Proposed certification pay for commissioned officers:

| | | | | | |
|---|---|---|---|---|---|
| Basic Peace Officer Certificate | 50.00 per month | 9 officers = | $ 5,400 | | |
| Intermediate Peace Officer Certificate | 100.00 per month | 8 officers = | $ 9,600 | | |
| Advanced Peace Officer Certificate | 150.00 per month | 4 officers = | $ 7,200 | | |
| Master Peace Officer certificate | 200.00 per month | 2 officers = | $ 4,800 | | |
| | | Certification Impact | | $ 27,000 | |
| FICA | $ 69,507 | FICA | $ 86,155 | | |
| Retirement | $ 89,686 | Retirement | $ 111,168 | | |
| Medicare | $ 16,256 | Medicare | $ 20,149 | | |
| Unemployment | $ 4,484 | Unemployment | $ 6,392 | | |
| Total | $ 179,933 | Total | $ 223,864 | | |
| | | Total Benifit Impact | | $ 43,931 | |

| Difference between current and proposed from all areas | $ 312,451 |
|---|---|

| Total impact to the general fund | $ 287,959 |
|---|---|

The following are five (5) qualified voters of the County of Anderson who shall compose Committee of the Petitioners as required by Section 152.072, TEXAS LOCAL GOVERNMENT CODE:

| | (name) | (address) | (city, state, zip) |
|---|---|---|---|
| 1. | Dan Scarbrough | Rt. 8 Box 677 | Palestine, Texas 75801 |
| 2. | Erwin Dabbs | Rt. 2 Box 84-B | Frankston, Texas 75763 |
| 3. | Meador Montgomery | 225 Micheaux | Palestine, Texas 75801 |
| 4. | Cathy Stark | 211 Inwood | Palestine, Texas 75801 |
| 5. | Bill Curley | 1002 Woodland | Palestine, Texas 75801 |

Each of the undersigned states that they personally signed this petition to Increase Salaries; that they have not signed any other petition for the same measure; that they are a qualified voter for the County of Anderson, Sate of Texas; that their place of residence in said County and State, including street and number is correctly written after their name; that they have read the said petition and each understands the same, which petition is part thereof.

1.
| Signature | Address | City/County/Zip | Phone |
|---|---|---|---|
| Printed Name | Date of Birth | Voter Registration # | Date Signed |

2.
| Signature | Address | City/County/Zip | Phone |
|---|---|---|---|
| Printed Name | Date of Birth | Voter Registration # | Date Signed |

3.
| Signature | Address | City/County/Zip | Phone |
|---|---|---|---|
| Printed Name | Date of Birth | Voter Registration # | Date Signed |

* * *

STATE OF TEXAS
COUNTY OF ANDERSON
I,_____, BEING FIRST DULY SWORN ON OATH DEPOSE AND SAY THAT I AM ONE OF THE CIRCULATORS OF THE ABOVE PETITION; AND THAT THE STATEMENTS MADE THEREIN ARE TRUE, THAT THIS PETITION BEARS_____ SIGNATURES, AND THAT EACH SIGNATURE APPEARING THERETO WAS MADE IN MY PRESENCE ON THE DAY AND DATE IT PURPORTS TO HAVE BEEN MADE, AND I DO SOLEMNLY SWEAR THAT THE SAME IS THE GENUINE SIGNATURE OF THE PERSON WHOSE NAME IT PURPORTS TO BE.

_____
SIGNATURE OF CIRCULATOR
Sworn and subscribed to before me of this_____day of_____, 2____
_____
Notary Public, State of Texas