# Supreme Court of Texas

No. 24-0678

In re Dallas HERO and Cathy Cortina Arvizu,

*Relators*

On Petition for Writ of Mandamus

JUSTICE BUSBY delivered the opinion of the Court.

This dispute sits at the intersection of citizens' power to propose amendments to their city's charter, the city council's power to do likewise, and the council's responsibilities in preparing the ballot for an election to approve proposed amendments. *See* TEX. ELEC. CODE § 52.072; TEX. LOC. GOV'T CODE § 9.004(a). Relators organized a citizen petition drive and signed petitions to place three proposed charter amendments on the upcoming election ballot, and the city council submitted three proposed amendments of its own that relators contend would effectively nullify their proposed amendments. The council-initiated propositions include primacy provisions specifying that they control in the event of a conflict.

Relators have filed a mandamus petition raising four challenges to the council-initiated propositions. The principal question we decide is whether the ballot language the city council selected to describe the

various propositions satisfies the standard of clarity and definiteness we articulated in *Dacus v. Parker*, 466 S.W.3d 820 (Tex. 2015). We hold that it does not: the propositions contradict each other, and the ballot language as a whole will confuse and mislead voters because it does not acknowledge these contradictions or address the effect of the primacy provisions, which are chief features central to the character and purpose of the council-initiated propositions. Because the citizen-initiated propositions must appear on the ballot and the parties have agreed to the ballot language for those propositions, we conclude the proper remedy is to direct the city council not to include its duplicative propositions on the ballot.

## BACKGROUND

The qualified voters of a municipality may propose an amendment to its charter by petition, and the governing body of the municipality "shall submit" the amendment to the voters for approval at an election if the petition contains sufficient signatures. TEX. LOC. GOV'T CODE § 9.004(a). Relator Dallas HERO, a grassroots organization, spearheaded the collection of signatures for three petitions to amend the charter of the City of Dallas. HERO collected over 169,000 voter signatures on all three petitions combined, and relator Cathy Arvizu signed each of the three petitions.

On July 19, 2024, the city secretary certified that each of HERO's petitions included sufficient voter signatures for the measures to qualify for places on the ballot. The Dallas City Council held multiple meetings in mid-August to discuss a special election on proposed amendments to the charter, including the three citizen-initiated propositions and

2

several others that an appointed commission recommended to the council as part of the City's decennial charter review. *See id.* (authorizing municipality's governing body to submit proposed charter amendments to voters). Although HERO initially threatened to challenge the City's chosen ballot language for the citizen-initiated propositions, HERO ultimately negotiated with the City and agreed in writing to specific language for those propositions, which the council designated as Propositions S, T, and U. The council passed an ordinance ordering a special election on those propositions, among others, at its meeting on August 14, 2024. *See* Dallas, Tex., Ordinance 32798 § 2 (Aug. 14, 2024).

During these meetings, several council members expressed their disapproval of the citizen-initiated propositions, and three council members moved to amend the ordinance to include three more proposed charter amendments. The motion passed, and these council-initiated propositions were designated Propositions K, M, and N. In total, the city council voted to submit more than a dozen proposed charter amendments to the voters in an election to be held November 5, 2024.

On August 21, relators sought emergency mandamus relief simultaneously in the Fifth Court of Appeals[1] and this Court against the City of Dallas and several of its elected officials in their official capacities

---

[1] The court of appeals denied the petition for writ of mandamus on August 23, 2024, concluding that relators failed to comply with Texas Rule of Appellate Procedure 52 in that court and, in any event, failed to demonstrate their entitlement to mandamus relief. *In re Dallas HERO*, No. 05-24-01000-CV, ___ S.W.3d ___, 2024 WL 3912358, at *1 (Tex. App.—Dallas Aug. 23, 2024). The court also denied a related emergency motion as moot. *Id.* at *2.

(collectively, the City).[2]  The City has filed a response to the mandamus petition in this Court, which we consider along with the parties' court of appeals filings.[3]

## ANALYSIS

The petition for writ of mandamus raises four issues: whether Propositions K, M, and N (1) fail to satisfy the *Dacus* standard, (2) violate the single-issue rule, and (3) violate the home-rule provisions of the Texas Constitution; and (4) whether the agreed-upon ballot language for Propositions S, T, and U should be amended.  We conclude that relators are entitled to relief in part.

---

[2] The real parties in interest are: (1) Chad West, in his official capacity as City of Dallas Council Member, District 1; (2) Jesse Moreno, in his official capacity as City of Dallas Council Member, District 2; (3) Zarin D. Gracey, in his official capacity as City of Dallas Council Member, District 3; (4) Carolyn King Arnold, in her official capacity as City of Dallas Council Member, District 4; (5) Jaime Resendez, in his official capacity as City of Dallas Council Member, District 5; (6) Omar Narvaez, in his official capacity as City of Dallas Council Member, District 6; (7) Adam Bazaldua, in his official capacity as City of Dallas Council Member, District 7; (8) Tennell Atkins, in his official capacity as City of Dallas Council Member, District 8; (9) Paula Blackmon, in her official capacity as City of Dallas Council Member, District 9; (10) Kathy Stewart, in her official capacity as City of Dallas Council Member, District 10; (11) Jaynie Schultz, in her official capacity as City of Dallas Council Member, District 11; (12) Cara Mendelsohn, in her official capacity as City of Dallas Council Member, District 12; (13) Gay Donnell Willis, in her official capacity as City of Dallas Council Member, District 13; (14) Paul E. Ridley, in his official capacity as City of Dallas Council Member, District 14; (15) Billierae Johnson, in her official capacity as the City of Dallas City Secretary; and (16) Eric L. Johnson, in his official capacity as Mayor of the City of Dallas.

[3] *See In re Williams*, 470 S.W.3d 819, 821 (Tex. 2015) (collecting cases in which "we have granted relief without requesting additional briefing—especially in election cases—when time is critical, the issues are clear, and all parties have had a chance to respond").

4

As we explain below, Propositions K, M, and N "mislead the voters by omitting certain chief features that reflect [their] character and purpose" in violation of *Dacus*, 466 S.W.3d at 826, and removing those propositions from the ballot would remedy the redundancy and confusion they create without delaying the election. We therefore hold that Propositions K, M, and N may not be included on the ballot as presently written. Because our holdings on the first issue support the relief requested, we do not reach relators' second or third issues.

Regarding Propositions S, T, and U, we hold relators are estopped from challenging the ballot language they agreed the City would use. *See Robinson v. Plano Bd. of Educ.*, 514 S.W.2d 135, 137-38 (Tex. Civ. App.—Dallas 1974, no writ). We thus deny relief on their fourth issue.

## I.      Governing law

This Court has jurisdiction to issue a writ of mandamus "compel[ling] the performance of any duty imposed by law in connection with the holding of an election." TEX. ELEC. CODE § 273.061. "[M]andamus relief is appropriate if the relator establishes a clear abuse of discretion for which there is no adequate appellate remedy." *In re Durnin*, 619 S.W.3d 250, 252 (Tex. 2021) (citing *In re AutoNation, Inc.*, 228 S.W.3d 663, 667 (Tex. 2007)). A clear abuse of discretion is shown where the law has imposed a ministerial duty on a city "regarding the handling of a referendum petition and any resulting election," but the city does not comply with that law. *In re Williams*, 470 S.W.3d 819, 820 (Tex. 2015). "If a ballot can be corrected prior to the election, a post-election contest is an inadequate remedy for mandamus purposes." *Durnin*, 619 S.W.3d at 252.

5

"Home-rule cities possess the full power of local self-government, which includes the power of qualified voters in the city to adopt or amend a city charter by majority vote." *Hotze v. Turner*, 672 S.W.3d 380, 385 (Tex. 2023) (internal quotation marks and footnote omitted). This direct legislative power "is the exercise by the people of a power reserved to them, and not the exercise of a right granted."[4] Because we presume that voters are familiar with every measure on the ballot,[5] proposed amendments to a city charter need not be reprinted verbatim on the ballot. *Dacus*, 466 S.W.3d at 826. "Except as otherwise provided by law, the authority ordering the election shall prescribe the wording of a proposition that is to appear on the ballot." TEX. ELEC. CODE § 52.072(a).[6] Cities thus have broad discretion in crafting the ballot language describing propositions. *Dacus*, 466 S.W.3d at 826.

But this discretion has important statutory and common-law limits. For example, a proposition "may appear on the ballot only once." TEX. ELEC. CODE § 52.072(b). And "[t]he common law protects the

---

[4] *Taxpayers Ass'n of Harris County v. City of Houston*, 105 S.W.2d 655, 657 (Tex. 1937); *see* TEX. CONST. art. I, § 2 ("All political power is inherent in the people[.]"). The ballot-initiative process has deep historical roots in Texas's legislative tradition, stemming from "the people's dissatisfaction with officialdom's refusal to enact laws." *Coalson v. City Council of Victoria*, 610 S.W.2d 744, 747 (Tex. 1980).

[5] Election notices, including "a substantial copy of the proposed amendment" to the city charter, must be published in the newspaper before the election. TEX. LOC. GOV'T CODE § 9.004(c)(1).

[6] Under the Election Code, a "proposition" is "the wording appearing on a ballot to identify a measure," TEX. ELEC. CODE § 1.005(15), which is "a question or proposal submitted in an election for an expression of the voters' will," *id.* § 1.005(12).

6

integrity of the election with a minimum standard for the ballot language." *Dacus*, 466 S.W.3d at 823. In addition to allowing voters "to identify and distinguish the different propositions from each other," *id.* at 824, "[t]he language appearing on the ballot, regardless of its source, must 'substantially submit[] the question . . . with such definiteness and certainty that the voters are not misled.'" *In re Petricek*, 629 S.W.3d 913, 919 (Tex. 2021) (quoting *Dacus*, 466 S.W.3d at 823); *see also Reynolds Land & Cattle Co. v. McCabe*, 12 S.W. 165, 165 (Tex. 1888).

In *Dacus*, we recognized two ways in which a proposition's ballot language may mislead voters. "First, it may affirmatively misrepresent the measure's character and purpose or its chief features. Second, it may mislead the voters by omitting certain chief features that reflect its character and purpose." *Dacus*, 466 S.W.3d at 826. Relators argue that the ballot language for the council-initiated propositions is misleading in this second way.

## II.    At least one relator has standing.

Before reaching the dispositive issue, we must confront the City's argument that relators lack standing to challenge the language of the council-initiated propositions. In *Blum v. Lanier*, we recognized that "[c]itizens who exercise their rights under initiative provisions act as and 'become in fact the legislative branch of the municipal government.'" 997 S.W.2d 259, 262 (Tex. 1999) (quoting *Glass v. Smith*, 244 S.W.2d 645, 649 (Tex. 1951)). "[A]s sponsors of the initiative, [these signers] have a justiciable interest in seeing that their legislation is submitted to the people for a vote" without misleading language. *Id.* Thus, "a qualified voter . . . has standing to seek . . . an injunction forbidding the

7

City's use of a misleading ballot proposition so long as the injunction does not operate to delay or cancel the called election." *Id.* at 264. This "reasoning also applies to [pre-election] mandamus proceedings." *Williams*, 470 S.W.3d at 821; *see also Petricek*, 629 S.W.3d at 917 ("Voters who sign an initiative petition have standing to seek mandamus relief against the city council if they can establish the elements for such relief.").

As we have explained, the signers' "interest in the *valid execution* of the charter amendment election" constitutes "an interest in that election distinct from that of the general public." *Blum*, 997 S.W.2d at 262 (emphasis added). Some courts have also recognized that a particularity of interest in the electoral process may stem from activities like "organiz[ing] and financ[ing] a petition drive to get [a proposition] on the ballot." *In re Robinson*, 175 S.W.3d 824, 828 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

Here, relator Arvizu signed the petitions for the citizen-initiated propositions, so she has an interest in the electoral process sufficient to confer standing. *Blum*, 997 S.W.2d at 262-64. The parties do not extensively address relator HERO's standing either as an entity that organized the petition drive or through the doctrine of associational standing. *See generally Abbott v. Mexican Am. Legis. Caucus*, 647 S.W.3d 681, 690-95 (Tex. 2022). But we need not determine HERO's standing, as Arvizu's is sufficient to pursue the full extent of relators' requested relief. *See Heckman v. Williamson County*, 369 S.W.3d 137, 152 n.64 (Tex. 2012).

8

The City argues, however, that relators' standing extends only to challenges regarding the electoral process for the citizen-initiated propositions and does not extend to the council-initiated propositions. Under the particular circumstances of this case, we disagree. The injury relators assert is that the ballot language for the council-initiated propositions misleads voters because it omits the effect those propositions would have on the propositions for which Arvizu signed petitions. Consistent with our cases described above, we conclude the same particularity of interest arises when there is a colorable basis for arguing that another proposition on the same ballot would have the effect of negating a proposition the voter signed. The invasion of that interest is no less distinct or particularized when allegedly misleading or confusing ballot language is located in a separate proposition that otherwise duplicates the same substantive measure.

## III. The ballot language for Propositions K, M, and N is misleading.

Turning to the merits of relators' challenge, we conclude that the ballot language for council-initiated Propositions K, M, and N violates the *Dacus* standard's second prong by "omitting certain chief features that reflect [their] character and purpose." 466 S.W.3d at 826.[7] When various propositions on the ballot interact with each other, the ballot should be considered as a whole in applying this standard.[8]

---

[7] In conducting this analysis, we have no occasion to consider the validity or effect of any proposition if approved by the voters.

[8] *See City of McAllen v. McAllen Police Officers Union*, 221 S.W.3d 885, 895 (Tex. App.—Corpus Christi–Edinburg 2007, pet. denied) (upholding trial

9

Although Section 9.005 of the Texas Local Government Code "requires a City Council to adopt and give effect to a citizen-initiated amendment that the voters approve by a majority vote, a dilemma arises when two approved amendments conflict." *Hotze*, 356 S.W.3d at 389-390. Here, each of the three council-initiated propositions will, if approved by voters, create precisely that dilemma for one or more of the citizen-initiated propositions. Yet the ballot language does not acknowledge the conflicting character of these propositions so that voters can attempt to avoid the dilemma by casting consistent votes. Nor does it inform voters of conflict provisions the council included in its propositions for the purpose of resolving this dilemma in favor of the council-initiated propositions.

Specifically, the agreed-upon ballot language describing citizen-initiated Proposition S reads:

> Shall the Dallas City Charter be amended by adding a new chapter that *grants standing* to any resident of Dallas to bring a lawsuit against the city to require the city to comply with provisions of the city charter, city ordinances, and state law; entitles claimants to seek declaratory and injunctive relief against the city and recover costs and reasonable attorney's fees; and *waives the city's governmental immunity from suit and liability* in claims brought under this amendment?

(emphases added). Compare the ballot language describing council-initiated Proposition M, which reads:

---

court's conclusion that "the propositions [as described on the ballot] were misleading, both in and of themselves, and in juxtaposition to one another"), *disapproved of in part on other grounds by Dacus*, 466 S.W.3d at 826 & n.12.

Shall Chapter II of the Dallas City Charter be amended by adding a section that states that Nothing in the City charter is intended to waive the City's *governmental immunity* from suit liability or damages, or to grant *standing* to residents to sue the city, its employees or officials?

(emphases added).

Our review of the proposed charter amendments' text confirms that Proposition M would prevent anything in the charter from granting residents standing to sue the City or waiving the City's governmental immunity from suit and liability. Conversely, Proposition S would (among other things) amend the charter to grant residents standing to sue the City and waive the City's governmental immunity from suit and liability. In other words, a chief feature of Proposition M is that it conflicts entirely with Proposition S—or, as the City puts it, the propositions use "identical terms" to "advance different outcomes." Yet the ballot language for Proposition M—which appears first on the ballot—does not acknowledge this characteristic.[9]

Furthermore, the Proposition M charter amendment includes a primacy provision that reads: "If there is a conflict between this provision and another provision of this charter, this provision controls." As this language reveals, a purpose of the Proposition M amendment is

---

[9] We do not hold that the ballot description for any charter amendment that clarifies or contradicts other existing or proposed parts of the city charter to any degree must flag that inconsistency to comply with *Dacus*. Instead, we hold that when the conflict between a proposed charter amendment and another proposition on the same ballot is substantial enough to be considered a chief feature, as it unquestionably is here, failing to identify that conflict in the ballot language is misleading.

11

to negate the Proposition S amendment, which appears on the same ballot.[10]  But the ballot language for Proposition M omits this chief feature that reflects its purpose.  For these reasons, we hold the Proposition M ballot language is misleading.

Similar conflicts arise from the juxtaposition of the other two pairs of propositions.  The agreed-upon ballot language describing citizen-initiated Proposition T reads:

> Shall Chapter VI of the Dallas City Charter be amended by adding a new section compelling the city to conduct the city-commissioned Community Survey on an annual basis, to be completed by a minimum of 1,400 Dallas residents on their satisfaction on quality of life issues, the results of which will result in the *city manager earning additional performance compensation* (between 0 percent and 100 percent of the city manager's annual base salary) or the *termination of the city manager*?

(emphases added).  The ballot language describing council-initiated Proposition N reads:

> The appointment-removal and compensation-language in chapter six, section one of the city charter *controls over any other conflicting provision* of the city charter.

---

[10] We express no view regarding how a court would reconcile the conflicting propositions discussed in this section of our opinion—including what effect the primacy provisions of the council-initiated propositions would have—if all were approved as currently drafted. *See Hotze*, 672 S.W.3d at 389-390.  Under the *Dacus* standard, it is sufficient to conclude that the ballot description is also misleading because it does not identify that a purpose of the council-initiated propositions—as shown by their primacy provisions—is to negate the citizen-initiated propositions.  We also observe that if it is an open question how a court would resolve the conflicts, it is unlikely that voters will understand how to cast their votes to do so without providing any guidance in the ballot language.

(emphasis added).[11]

In addition to establishing an annual survey of city residents, Proposition T ties the city manager's compensation and removal from office to the results of that survey. But Proposition N adds a primacy provision that seeks to nullify any alternative means for determining compensation and removal, which would include Proposition T's new survey. Because the ballot language for Proposition N does not state the chief feature that it proposes to nullify Proposition T, which is part of the same ballot, we hold that Proposition N's ballot language is misleading.

Finally, both Propositions K and U seek to affect appropriations for public-safety officers in direct conflict with one another. The agreed-upon ballot language describing citizen-initiated Proposition U reads:

> Shall Chapter XI of the Dallas City Charter be amended by adding a new section compelling city council to *appropriate no less than* 50 percent of annual revenue that exceeds the total annual revenue of the previous year to fund the Dallas Police and Fire Pension, with any monies remaining of that 50% to *be appropriated to increasing the starting compensation* of officers of the Dallas Police Department and to increase the *number of police officers* to a minimum of 4,000, and to *maintain that ratio* of officers to the City of Dallas population as of the date of passage of this amendment?

(emphases added). The language describing council-initiated Proposition K reads:

---

[11] Chapter Six, Section One of the charter gives the city council authority over the appointment, compensation, and removal of the city manager. *See* Dallas, Tex., City Charter ch. VI, § 1.

13

> Shall Chapter XI, Section 3 and Chapter XXIV, Section 18 of the Dallas City Charter be amended to state that *city council shall make the final determinations regarding appropriations* of City funds. And that *any instructions in the charter regarding the appropriation of City funds for City employee wages serve only as recommendations for City Council's consideration and that these provisions control over other provisions in the City Charter*?

(emphases added).

Proposition U seeks to bind the City to appropriate money for public safety, dedicating certain percentages of annual revenue to wages and other compensation for police officers and firefighters. But Proposition K—as well as Proposition N discussed above—seeks to protect the City from being bound by any such requirements, demoting them to mere recommendations the council may follow and giving it complete discretion over appropriations. Because Proposition K's ballot language does not state the chief feature that it proposes to nullify Proposition U, which appears on the same ballot, we hold that the ballot language of Proposition K is misleading.

In sum, the ballot descriptions for council-initiated Propositions K, M, and N do not "identify [each] measure for what it is"[12]—a proposed charter amendment that conflicts with and proposes to nullify a citizen-initiated charter amendment on the same ballot. Simultaneously holding an election on contradictory propositions with which the City cannot comply is confusing, and ballot language that fails to address that contradiction or how it will be resolved does not

---

[12] *Dacus*, 466 S.W.3d at 826.

14

"substantially submit[] the question . . . with such definiteness and certainty that voters are not misled." *Petricek*, 629 S.W.3d at 919.

## IV. The appropriate remedy is to remove duplicative Propositions K, M, and N from the ballot.

The parties disagree regarding how to remedy a *Dacus* violation of this nature. Relators contend that Propositions K, M, and N should be removed from the ballot, while the City contends that all this Court can do before the election is order it to correct the ballot descriptions so they are not misleading. Because Propositions K, M, and N are the converse of other propositions on the ballot, which is the source of the confusion, we conclude that removal of the duplicative propositions in their current form is the appropriate remedy.

Given the separation of legislative and judicial powers, we have refrained from enjoining elections before they are held. *In re Morris*, 663 S.W.3d 589, 593 (Tex. 2023). But we have exercised our statutory and common-law authority to grant pre-election mandamus or injunctive relief "forbidding the City's use of a misleading ballot proposition so long as the [relief] does not operate to delay or cancel the called election." *Blum*, 997 S.W.2d at 264; *see also Williams*, 470 S.W.3d at 821.

Here, directing the City to remove current Propositions K, M, and N does not interfere with or delay the upcoming election. Instead, it recognizes that a city may not confuse its voters by submitting the converse of citizen-initiated propositions that must appear on the ballot. "[C]omplying with incompatible charter amendments" is an "impossible task." *Hotze*, 672 S.W.3d at 390. And a city has no discretion to submit

15

a proposition more than once. *See* TEX. ELEC. CODE § 52.072(b) ("A proposition . . . may appear on the ballot only once.").

As we have explained, the text of each challenged council-initiated proposition demonstrates that its purpose is to nullify a citizen-initiated proposition. In this circumstance, only one question is really being asked of voters, so directing that it cannot be asked a second time in a different way is not canceling an election. Rather, that remedy "correct[s] deficiencies in the ballot" and "facilitates the elective process," *Blum*, 997 S.W.2d at 263, by ensuring that voters understand what they are being asked and that votes in favor of one proposition do not negate votes in favor of another.[13]

## CONCLUSION

For the foregoing reasons, and without hearing oral argument, *see* TEX. R. APP. P. 52.8(c), we conditionally grant mandamus relief in part and direct the City to remove Propositions K, M, and N from the ballot. We are confident the City will comply, and the writ will issue only if it does not.

J. Brett Busby
Justice

**OPINION DELIVERED:** September 11, 2024

---

[13] To the extent the City wishes its council-initiated propositions to have broader application, nothing in this opinion prevents the City from rewording them in a manner that does not contradict the citizen-initiated propositions.